NUMBER 13-01-778-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI







GUADALUPE-BLANCO RIVER AUTHORITY
, Appellant,


v.



PAUL J. PITONYAK, JR., ET AL., Appellees.





On appeal from the 24th District Court


of Calhoun County, Texas.






O P I N I O N



Before Justices Hinojosa, Yañez, and Castillo


Opinion by Justice Castillo



 This is an interlocutory appeal from the denial of a plea to the jurisdiction. (1) In
three issues, appellant Guadalupe-Blanco River Authority("GBRA") asserts that the trial
court erred in denying the plea to the jurisdiction because appellees (2) failed to allege
any claims which fall within the waiver provisions of the Texas Tort Claims Act. (3) We
reverse.

Background

 GBRA is a conservation and reclamation district created by the State of Texas
as a governmental agency in 1933 to oversee the waters of Hays, Comal, Guadalupe,
Caldwell, Gonzales, DeWitt, Victoria, Kendall, Refugio and Calhoun counties. Act of
May 21, 1975, 64th Leg. R.S., Ch. 433, 1975 Tex. Gen. Laws 1149, 1149. Among
the public duties of GBRA are the conservation and development of the navigation of
inland waters, and the control, storing, preservation and distribution of the waters of
rivers and streams contained therein. Id.

 Among the waters within the jurisdiction of the GBRA is Goff Bayou. Within
Goff Bayou, GBRA maintains a saltwater barrier which prevents saltwater from
entering the fresh waters of the diversion system and also serves to release excess
fresh water out of the bayou. The saltwater barrier is an unmanned concrete and steel
structure which connects the bayou with one of the bays of the Gulf of Mexico. It
operates by use of radial, or retainer, gates (4) which face the opposing force of the
water and are hinged so they can be raised outside the water. They can be raised off
the bottom of the channel to allow water to flow beneath them. When the gates are
closed, the saltwater is prevented from migrating upstream. The gates are opened to
release flood waters. 

 On October 20, 1997, Paul Pitonyak and Carl Holcomb drowned in Goff Bayou. 
Appellees filed suit against GBRA, (5) citing the Texas Tort Claims Act. GBRA filed a
plea to the jurisdiction, which was denied by the trial court, and this appeal ensued.

Standard of Review

 This appeal is strictly limited to our review of the trial court's ruling on the plea
to the jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. §51.014(a)(8) (Vernon Supp.
2002). A plea to the jurisdiction is the vehicle by which a party contests the trial
court's authority to determine the subject matter of the cause of action. State v.
Benavides, 772 S.W.2d 271, 273 (Tex. App.-Corpus Christi 1989, writ denied). A
governmental unit may properly challenge a trial court's subject matter jurisdiction by
filing a plea to the jurisdiction since absent the state's consent to suit a trial court has
no subject matter jurisdiction. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638-39
(Tex. 1999). 

 The plaintiff bears the burden of alleging facts affirmatively demonstrating the
trial court's jurisdiction to hear a case. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993); Mission Consol. Indep. Sch. Dist. v. Flores, 39
S.W.3d 674, 676 (Tex. App.-Corpus Christi 2001, no pet.). A trial court must not
weigh the merits of the case, but instead consider only the pleadings and evidence
pertinent to the jurisdictional question. County of Cameron v. Brown, 45 Tex. Sup.
Ct. J. 680, No. 00-1020, 2002 Tex. LEXIS 58, *9-10 (Tex. May 23, 2002)(citing
Tex. Natural Res. Conservation Comm'n v. White, 46 S.W.3d 864, 868 (Tex. 2001)
and Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000)). In doing so,
the trial court must construe the plaintiff's pleadings liberally in favor of jurisdiction,
Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989), and must take all factual
allegations pled as true, unless the defendant pleads and proves that the allegations
were fraudulently made in order to confer jurisdiction. Cont. Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). If a plaintiff pleads facts that
affirmatively demonstrate an absence of jurisdiction and such defect is incurable,
immediate dismissal of the case is proper. Peek, 779 S.W.2d at 804-05; City of
Austin v. L.S. Ranch, 970 S.W.2d 750, 753 (Tex. App.-Austin 1998, no pet.). 
However, the mere failure of a petition to state a cause of action does not show a
want of jurisdiction in the court. Bybee v. Fireman's Fund Ins. Co., 160 Tex. 429,
331 S.W.2d 910, 917 (1960). If the plaintiff's pleadings are insufficient to
demonstrate the court's jurisdiction, but do not affirmatively show incurable defects
in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend
before dismissing. Brown, 2002 Tex. LEXIS 58, at *10; Peek, 779 S.W.2d at 804-05. On appeal, because the question of subject matter jurisdiction is a legal question,
we review the trial court's ruling on a plea to the jurisdiction under a de novo standard
of review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). To
determine whether the plaintiff has affirmatively demonstrated the court's jurisdiction
to hear the case, we consider the facts alleged by the plaintiff, and to the extent it is
relevant to the jurisdictional issue, the evidence submitted by the parties. White, 46
S.W.3d at 868. Like the trial court, we must construe the pleadings in the plaintiff's
favor and look to the pleader's intent. Brown, 2002 Tex. LEXIS 58, at *10. Our task
is not to determine the merits of the case but rather to examine the petition, taking as
true the facts pled, and determine whether those facts support jurisdiction in the trial
court. Baston v. City of Port Isabel, 49 S.W.3d 425, 427-28 (Tex. App.-Corpus
Christi 2001, pet. denied).

Issues Presented

 In the present case, GBRA asserts that the trial court lacks subject matter
jurisdiction over appellees' claims because appellees' petition does not assert a claim
which is cognizable under the Texas Tort Claims Act. Specifically, GBRA claims that
the trial court erred in denying the plea to the jurisdiction because: 1) governmental
immunity barred appellees' claims and had not been waived by the Texas Tort Claims
Act; 2) the saltwater barrier was not defective; (6) and 3) no cause of action exists under
section 11.050 of the Texas Water Code. (7)

 As the issues are interrelated and all are some variant of the argument that the
trial court erred in denying the plea to the jurisdiction because appellees' pleadings did
not raise a claim cognizable under the Texas Tort Claims Act, we will address them
jointly as we consider the question of the trial court's jurisdiction in the instant case.

Sovereign Immunity

 Sovereign immunity, unless waived, protects the State of Texas from lawsuits
for damages absent legislative consent. Gen. Servs. Comm'n. v. Little-Tex Insulation
Co., 39 S.W.3d 591, 594 (Tex. 2001). Sovereign immunity derives from the principle
that the sovereign may not be sued in its courts without its consent. Tex. Workers'
Comp. Comm'n v. Garcia, 862 S.W.2d 61, 72 (Tex. App.-San Antonio 1993), rev'd
on other grounds, 893 S.W.2d 504 (Tex. 1995). Sovereign immunity encompasses
two principles - immunity from suit and immunity from liability. Fed. Sign v. Tex. S.
Univ., 951 S.W.2d 401, 405 (Tex. 1997). Immunity from liability protects the State
from judgments, even where there is an express consent on the part of the Legislature
to permit a suit. Id. Immunity from liability is an affirmative defense that must be pled
or else it is waived. Jones, 8 S.W.3d at 638 (citing Davis v. City of San Antonio, 752
S.W.2d 518, 519-20 (Tex. 1988)). Immunity from suit, on the other hand, bars a suit
against the State unless the State expressly gives consent to the suit. Fed. Sign, 951
S.W.2d at 405. Immunity from suit then deprives a trial court of subject matter
jurisdiction over the governmental agency, even if liability is undisputed. Travis Co.
v. Pelzel & Assocs., Inc., 45 Tex. Sup. Ct. J. 623, No. 01-0036, 2002 Tex. LEXIS 54,
*5 (Tex. May 9, 2002)(citing Jones, 8 S.W.3d at 638). 

 Subject matter jurisdiction is never presumed and cannot be waived. Tex. Ass'n
of Bus., 852 S.W.2d at 443-44. Since a governmental unit is protected from suit by
sovereign immunity, pleadings in a suit against a governmental unit must affirmatively
demonstrate, either by reference to a statute or express legislative permission, that the
legislature consented to the suit. Jones, 8 S.W.3d at 638. Absent the State's
consent to suit, the trial court has no jurisdiction. Id.

The Texas Tort Claims Act and Waiver of Sovereign Immunity

 As a general rule, government entities are immune from tort liability under the
doctrine of sovereign immunity unless the legislature has waived immunity. Harris
County v. Dillard, 883 S.W.2d 166, 168 (Tex. 1994). Whether a particular claim
falls into an exception from the general doctrine of sovereign immunity is entirely
dependant on the statutory language. Dallas County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998). 

 The Texas Tort Claims Act provides that governmental units are liable for

(1) property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence of an
employee acting within his scope of employment if: 


 (A) the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle or
motor-driven equipment; and


 (B) the employee would be personally liable to the claimant
according to Texas law; and


(2) personal injury and death so caused by a condition or use of
tangible personal or real property if the government unit would,
were it a private person, be liable to the claimant according to
Texas law. 


Tex. Civ. Prac. & Rem. Code Ann. §101.021 (Vernon 1997). 

 Although the Texas Tort Claims Act speaks in terms of waiver of immunity from
liability, it also waives immunity from suit to the same extent. Tex. Dep't of Crim.
Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001)(citing Tex. Civ. Prac. & Rem. Code
Ann. §101.025(a)(Vernon 1997))("Sovereign immunity to suit is waived and abolished
to the extent of liability created by this chapter."). However, the mere invocation of
the Texas Tort Claims Act in a petition does not, per consequens, waive sovereign
immunity and confer jurisdiction on the trial court. Id. The claim raised must fall
within the specific scope of the waiver of immunity provided by the Texas Tort Claims
Act and so affirmatively demonstrate the trial court's jurisdiction to hear the case. Id.

 Therefore, since appellees' petition raises a claim against a governmental unit
under the Texas Tort Claims Act, we must review the petition to ascertain the nature
of the claim raised, examine the tort claims act to determine the scope of waiver of
sovereign immunity relevant to such claim, and then consider the particular facts of
the claim to decide whether it comes within that scope so as to invoke jurisdiction in
the trial court. Id. In doing so, we consider the facts alleged in the petition and, "to
the extent it is relevant to the jurisdictional issues, the evidence submitted by the
parties." White, 46 S.W.3d at 868.

Appellees' Claims

 The First Amended Original Petition

 In their first amended petition, appellees allege that GBRA was negligent in
creating a premise defect, specifically claiming that the decedents' deaths were caused
by a "negligent condition and/or use of tangible personal and/or real property." The
petition also claims that the saltwater barrier created a special defect. Appellees
further allege that GBRA had a duty to inspect and maintain the saltwater barrier in
good working condition, inspect and maintain any warning sign and any safety devices
and, pursuant to section 11.050 of the Texas Water Code, have a "competent person"
at the barrier at all times. The petition asserts that GBRA was aware and had notice
of dangerous currents existing at the barrier, and as a result of its failure to inspect
and maintain adequate warning signs or safety devices in a good working condition
and to man the barrier at all times, GBRA is liable for damages. The petition further
asserts that GBRA was negligent in implementing its policy of protecting the public
from known dangerous conditions created by the saltwater barrier by: 1) erecting an
inadequate and misleading sign which failed to properly warn of the dangers
associated with the barrier; and 2) failing to erect any barriers that would prevent
boaters from being drawn into the barrier. Appellees claim that GBRA created, knew,
or should have known of the unreasonable condition which posed an unreasonable risk
of harm to the decedents and that GBRA did not exercise reasonable care to reduce
or eliminate the risk in that GBRA did not correct or adequately warn decedents of the
risk and did not have an employee at the barrier. The petition alleges that the fatal
injuries were a direct result of GBRA's negligence in: 1) creating an unsafe condition
at the saltwater barrier; and 2) in failing to adequately warn decedents of the unsafe
condition at the barrier. 

Claims Raised

 Appellees appear to attempt to raise the following types of claims: 1) use of
tangible personal property; 2) condition or use of real property (e.g., premise or special
defect, including duty to warn or make safe); 3) negligent implementation of policy;
and 4) negligence per se for violation of the Water Code.

 With the exception of the final claim listed, appellees appear to attempt to raise
claims that fit within the waiver of immunity provided by section 101.021(2) of the
tort claims act and we will examine those first.

Appellees' Claims under Section 101.021(2) 

 Under section 101.021(2) of the tort claims act, the State waives governmental
immunity for "injuries arising from some condition or use of personal property " and
"injuries arising from some condition or use of real property (premise defects)." Floyd
v. Willacy County Hosp. Dist., 706 S.W.2d 731, 732 (Tex. App.-Corpus Christi 1986,
writ ref'd n.r.e.). Therefore we will examine if appellees' claims fall within either of
these waivers.

A. Tangible Personal Property Claims

 Appellees' petition cites "a negligent condition and/or use of tangible personal
and/or real property," as responsible for causing the decedents' deaths. The petition,
however, does not plead any facts that any specific tangible personal property was in
a negligent condition, or was used, and so caused the death of decedents. The only
tangible items that are mentioned in the petition are: 1) the saltwater barrier; 2)
dangerous currents; 3) warning signs; 4) safety devices; and 5) other barriers. (8)
 

 On appeal, appellees describe the saltwater barrier as real property. We agree. 
It is a structure affixed to the land, like a bridge or a building, and so cannot be
tangible personal property. See San Antonio Area Found. v. Lang, 35 S.W.3d 636,
640 (Tex. 2000)(real property is land and generally whatever is erected or growing
upon or affixed to land). The dangerous currents complained-of are clearly the
dangerous condition alleged as part of the attempted premise defect claim, not the
property, tangible or real, which appellees are alleging was used or which was in a
negligent condition. This leaves the references to signs, safety devices and other
barriers.

 The first reference to any of these is appellees' complaint of GBRA's "failure to
inspect and maintain adequate warning signs or safety devices in a good working
condition" in violation of alleged duties to do so and appellees' claim that such failure
renders GBRA "liable for all negligent acts committed by said employees and/or
agents." (9) This is an attempt to raise a general negligence claim and does not state a
claim of use or misuse of any signs or safety devices. Nor does it raise a claim as to
the condition of the signs or safety devices, which apparently did not exist. 

 In another part of the petition, appellees clearly reference a particular
"inadequate and misleading" sign which we will assume to be tangible personal
property. See Garza v. State, 878 S.W.2d 671, 676 (Tex. App.-Corpus Christi 1994,
no writ)(Dorsey, J. dissenting)("a road sign . . . is tangible personal property"); but see
contra City of Midland v. Sullivan, 33 S.W.3d 1, 10 (Tex. App.-El Paso 2000, pet.
dism'd w.o.j.)(describing road signs as tangible real property). Both the reference to
this sign and one to "other barriers," are raised as part of appellees' claim of negligent
implementation of a safety policy. The "other barriers" are cited in the context of
GBRA's failure to use and thus cannot support a claim for the "use" of property. 
Kassen v. Hatley, 887 S.W.2d 4,14 (Tex. 1994)(allegation of "non-use"of property
cannot support a claim under the tort claims act). However, the "inadequate and
misleading" sign is, from the evidence before us, actual tangible property that was
allegedly in use that day. We will therefore consider the claim regarding the sign under
our discussion of negligent implementation infra. 

B. Condition or Use of Real Property

I. Non-Premise Defect Claims 

a. Can an action be brought for "condition or use" of real property 

distinct from a premise defect claim?


 From the inception we are faced with the question of whether a claim
complaining of the condition or use of real property can be raised separately from a
claim of a premise defect. Some courts have specifically held that it may not. Laman
v. Big Spring State Hosp., 970 S.W.2d 670, 671-72 (Tex. App.-Eastland 1998, pet.
denied) This Court has also held that where the claim is for an unsafe condition upon
land, the cause of action is for a premise defect, even if the petition claims a "use of
real property." Univ. of Texas-Pan American v. Valdez, 869 S.W.2d 446, 450 (Tex.
App.-Corpus Christi 1993, writ denied). This very question was raised in an amicus
curiae brief filed by the state attorney general in Dallas County MHMR v. Bossley,
citing to Valdez, but the supreme court declined to consider the question. Dallas
County MHMR v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998).

 Likewise, we need not determine this issue because, despite appellees' claim
that "decedents' deaths were caused by a negligent condition and/or the use of
tangible personal and/or real property," we do not find any specific allegations of the
use of a particular piece of real property in a particular way or a condition of the
property that is not part of a premise liability claim. Although the appellees' brief on
appeal claims that the gates of the barrier were used and thus created the dangerous
currents, and that the use of the salt water barrier allowed the defendants to be pulled
into the barrier, such a claim is not raised in the pleadings on file before this Court. 
There is a claim in the petition that GBRA created an unsafe condition at the barrier
but appellees do not allege that the barrier created the unsafe condition. The only
possible reference to use of real property is the claim that the barrier created a special
defect. Because we find such a claim legally impossible (see discussion of special
defects, infra), we do not consider it to raise a claim regarding the use of real property. 
Similarly, there is no complaint that the barrier was in a defective or inadequate
condition. See Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 32 (Tex. 1983)
(complaint of "some condition" requires an allegation of defective or inadequate
property). Rather, we find that the claims related to real property all complain of
some sort of premise defect related to a dangerous condition, namely the currents and
the failure to correct and/or warn of the same. 

II. Special Defect/Premise Defect Claims

a. Generally 

 The Texas Tort Claims Act recognizes liability for two types of dangerous
conditions of real property - premise defects and special defects. Tex. Civ. Prac. &
Rem. Code Ann. §101.022 (Vernon 1997). Where it is asserted that the injury is
caused by a premise defect, the governmental unit owes to the claimant only the same
duty as a private person owes to a licensee on private property. Tex. Civ. Prac. &
Rem. Code Ann. §101.022(a) (Vernon 1997). Thus the government's only duty is not
to injure the claimant willfully, wantonly, or through gross negligence. State Dep't of
Highways and Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992) (op. on
reh'g); State v. Tennison, 509 S.W.2d 560, 562 (Tex. 1974). The exception to this
rule is that, where a landowner has actual knowledge of a dangerous condition, and
the licensee does not, the landowner then has the duty either to warn the licensee or
to make the condition reasonably safe. Tennison, 590 S.W.2d at 562. 

 However, the limitation of the government's duty to claimants, to that duty
owed by a private landowner to a licensee, does not apply to the government's duty
to warn of special defects such as excavations or obstructions on highways, roads,
or streets or to warn of the absence, condition, or malfunction of traffic regulators. 
Tex. Civ. Prac. & Rem. Code Ann. §101.022(b) (Vernon 1997). Where there exists a
special defect, the government unit owes the same duty to users as a private
landowner owes to an invitee. Payne, 838 S.W.2d at 237. That is, the government
unit must exercise ordinary care to protect the user from a dangerous condition of
which the government unit is or reasonably should be aware. Id. A special defect is
generally limited to those conditions which occur on the surface of the road, or pose
a threat to ordinary users of the roadway. Id. at 238-39.

 The question of whether an alleged defect is a special defect or premise defect,
and thus what duty is owed, is a question of law and therefore considered de novo.
State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999). 

b. Special or Premise Defect?

 Appellees' petition references both a premise defect and a special defect. 
Specifically, it claims that there was a premise defect and that the saltwater barrier
created a special defect. Although appellees do not directly state in the petition what
they claim the premise defect was, they do mention dangerous currents alleged to
exist at the saltwater barrier. 

 A dangerous condition need not have been created or caused by the government
unit to constitute a special defect. County of Harris v. Eaton, 573 S.W.2d 177, 179
(Tex. 1978). However, the condition needs to be analogous to and of the same
degree as "excavations or obstructions on highways, roads, or streets." Tex. Civ.
Prac. & Rem. Code Ann. § 101.022(2) (Vernon 1997); Johnson v. Tex. Dep't of
Transp., 905 S.W.2d 394, 399 (Tex. App.-Austin 1995, no writ). It must present
"an unusual and unexpected danger to ordinary users of roadways." Payne, 838
S.W.2d at 238. 

 Neither the saltwater barrier nor the currents are of the nature or degree of
excavations or obstructions on highways, roads, or streets and hence are not special
defects. Id.; see also Payne v. City of Galveston, 772 S.W.2d 473, 477 (Tex.
App.-Houston [14th Dist.] 1989, writ denied)(seawall not a special defect as a matter
of law and in fact, not a defect but a condition of real property). Nor could the
saltwater barrier create a special defect as it could not create an obstruction on a
highway, road, or street. Accordingly, appellees' special defect claim cannot stand.

c. Liability under the Premise Defect Standard

 Appellees's only possible claim under this section, therefore, would be that of
a premise defect. Assuming that the premise defect alleged is the "dangerous
currents" alleged to be caused by the saltwater barrier, we consider then the duty
imposed on the government as to a premise defect in order to determine whether such
a claim has been pled.

 As previously stated, in the case of a premise defect, the ordinary duty of a
governmental unit is only to not willfully, wantonly, or through gross negligence injure
those using its land. Payne, 838 S.W.2d at 237. An exception exists, however, in
such cases where the governmental unit had actual knowledge of a dangerous
condition, and the person on the land did not. Tennison, 509 S.W.2d at 562. In
those cases, there then exists the further duty to exercise reasonable care to warn or
make safe the dangerous condition. Id. In the context of a challenge to jurisdiction,
therefore, the issue presented in reference to the Tennison exception is whether the
plaintiff has pled that the governmental unit had actual knowledge of the dangerous
condition and the plaintiffs did not. Appellees have so pled and thus have met that
pleading requirement. They have also pled that there was a dangerous condition which
the governmental unit failed to warn of or correct and that such condition was a
proximate cause of the injuries and damages. Payne, 838 S.W.2d at 237. Thus while
appellees did not plead the general standard (willful, wanton, or gross negligence), they
did plead the requirements of the Tennison exception. (10)

d. The Recreational Use Statute

 However, GBRA argues that civil practice and remedies code section
75.002(c)(2), commonly referred to as the "recreational use statute," limits the
government's duty to that owed to a trespasser and thus the only claim that could be
made against GBRA would be for willful, wanton, or grossly negligent conduct. See 
Tex. Civ. Prac. & Rem. Code Ann. §75.002(c)(2)(Vernon Supp. 2002). GBRA further
argues that appellees failed to plead willful, wanton, or grossly negligent conduct and
that the facts alleged in the petition affirmatively demonstrate that no facts could be
alleged that would state such a claim. Appellees respond that the recreational use
statute does not apply because the land involved was not agricultural and hence the
statute applies only if the owner gave permission to enter the premises and, in this
case, appellees had a right to be present and no permission was required.

 While the legislature has clearly made the recreational use statute applicable to
lands owned by governmental units, (11) and assuming that appellees are correct in their
assertion that the lands surrounding the waters are not agricultural, we face the
question of the "permission" requirement. 

 Appellees argue that since the waters upon which this occurred were navigable,
they were State waters and appellees had a right to navigate the waters without
seeking permission from GBRA. See Carrithers v. Terramar Beach Cmty. Improvement
Ass'n, 645 S.W.2d 772, 774 (Tex. 1983)(the waters of public navigational streams
are held by the State in trust for the public, primarily for navigation purposes). 
Appellees' argument then, in essence, would exempt navigable waters from the
application of the recreational use statute. We cannot countenance this interpretation. 
The plain language of the statute reveals the opposite intent. The very definition of
"premises" for the purpose of the recreational use statute specifically includes "water"
and "watercourse." Tex. Civ. Prac. & Rem. Code Ann. §75.001(2) (Vernon Supp.
2002). The definition of "recreation" in the statute includes swimming, fishing,
boating, waterskiing and other water sports. Tex. Civ. Prac. & Rem. Code Ann.
§75.001(3)(B),(C),(D) & (K)(Vernon Supp. 2002). The legislature clearly intended for
navigable waters to be covered by the recreational use statute.

 Moreover, appellees cannot both claim that the premises were State waters and
yet hold GBRA liable for a defect in those same waters. Tex. Parks & Wildlife Dep't
v. Wilson, 991 S.W.2d 93, 96-7 (Tex. App.-Austin 1999), pet. denied, 8 S.W.3d 634
(Tex. 1999)(per curiam) (where decedents drowned in river adjoining Department land,
there was no legal duty owed by the Department to decedents for a premise defect
because Department did not own the river). If the Bayou is State waters, then
appellees must sue the State for defects in such waters, not GBRA. If, on the other
hand, GBRA has control over the Bayou, then GBRA has the right to grant or deny
permission to persons to enter the waters under its control.

 In fact we note that GBRA's enacting legislation provides GBRA the authority
to regulate navigation in the waters under their control. Act of May 21, 1975, 64th
Leg. R.S., Ch. 433, 1975 Tex. Gen. Laws 1149, 1149. The fact that navigable
streams are held in trust for the benefit of the public does not mean that the State or
a duly-delegated governmental agency has no authority to restrict navigation on the
same. Tex. River Barges v. City of San Antonio, 21 S.W.3d 347, 355 (Tex. App.-San
Antonio 2000, pet. denied). To the contrary, states and their delegates may exert
police power over the navigable waters in their boundaries, including the regulation of
navigation on navigable streams. Id. Accordingly, GBRA had the authority to restrict
navigation on the waters under its control. We find that the recreational use statute
applies and that GBRA owed only the duty of a landowner to a trespasser - not to
injure willfully, wantonly or with gross negligence. Tex. Civ. Prac. & Rem. Code Ann.
§75.002(c)(2)(Vernon Supp. 2002). There was therefore no duty to warn of, or
correct, any dangerous condition and appellees were required to allege facts
demonstrating that the deaths arose from the willful, wanton, or grossly negligent
conduct of GBRA. City of Lubbock v. Rule, 68 S.W.3d 853, 859 (Tex. App.-Amarillo
2002, no pet. h.). (12) Moreover, the record before us indicates that while boating was
apparently permitted on Goff Bayou for recreational purposes, and that it was for those
purposes that decedents were in Goff Bayou, the area into which decedents entered
and drowned was restricted from the public. (13) Thus even if the recreational use
statute did not apply, the decedents would only have been owed the duty due to
trespassers.

 Appellees admit that no claim of the violation of a landowner's duty to a
trespasser was made in their pleadings, but argue that they should be allowed to
amend their pleadings to state such a violation. We consider, therefore whether the
petition might be amendable to raise a claim of willful, wanton, or gross negligence
under the factual situation alleged. 

 Gross negligence involves proof of two elements: (1) viewed objectively from
the actor's standpoint, the act or omission must involve an extreme degree of risk,
considering the probability and magnitude of the potential harm to others; and (2) the
actor must have actual, subjective awareness of the risk involved, but nevertheless
proceed in conscious indifference to the rights, safety, or welfare of others. See Mobil
Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998) (citing Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 23 (Tex. 1994)). In reference to the first requirement, the
"extreme risk" means the likelihood of serious injury to the plaintiff. Id. In reference
to the second requirement, ordinary negligence rises to the level of gross negligence
when it can be shown that the defendant was aware of the danger but his acts or
omissions demonstrated that he did not care to address it. Louisiana-Pacific Corp. v.
Andrade, 19 S.W.3d 245, 246-47 (Tex. 1999); Burk Royalty Co. v. Wells, 616
S.W.2d 911, 922 (Tex. 1981). The facts as alleged in this case, and the evidence
presented in support and against the plea to the jurisdiction, do not seem to support
a claim for gross negligence. Appellees allege no singular action by anyone that was
willful or wanton and the very fact that there was a sign warning boaters of the
dangerous currents, whether inadequate or misleading or not, would appear to negate
a claim of conscious indifference to the rights, safety or welfare of others. Moreover,
as discussed infra, the claims that GBRA failed to correct or warn of the dangerous
condition, would be barred by the discretionary-function exemption of the tort claims
act. See Tex. Civ. Prac. & Rem. Code Ann. §101.056 (Vernon 1997); Tex. Dep't of
Transp. v. Ramirez, 45 Tex. Sup. Ct. J. 594, 2002 Tex. LEXIS 43, *7 (Tex. April 25,
2002)(failure to correct or warn decedent of a defect in a roadway related to the
design and lack of safety features which were discretionary decisions for which the
State retains immunity under the discretionary-function exception). (14) Nevertheless, the
mere failure of a petition to state a cause of action does not justify dismissal for want
of jurisdiction. Bybee, 331 S.W.2d at 917. If the pleadings do not affirmatively
show incurable defects in jurisdiction, we must allow a plaintiff an opportunity to
amend and allege facts demonstrating jurisdiction, if he can, before dismissing the
cause. Brown, 2002 Tex. LEXIS 58, at *10. We do not conclude that the pleading
affirmatively demonstrates incurable defects in jurisdiction.

C. Negligent Implementation of Policy

 Appellees also make a claim of the negligent implementation of GBRA's safety
policy by erecting an "inadequate and misleading sign." (15)

 The tort claims act does not apply to a failure to perform an act where there is
no legal requirement for the State to perform such act or where the government's
decision not to perform an act is within its discretion. Tex. Civ. Prac. & Rem. Code
Ann. §101.056 (Vernon 1997). This has been interpreted as exempting discretionary
policy decisions from the tort claims act waivers, while allowing a waiver for decisions
made at an operational level. Tarrant County Water Control & Improvement Dist. No.
1 v. Crossland, 781 S.W.2d 427, 433 (Tex. App.-Fort Worth 1989, writ denied). In
other words, sovereign immunity is preserved for the negligent discretionary
formulation of policy, but not for the negligent implementation of the policy at the
operational level. City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995);
State v. Terrell, 588 S.W.2d 784, 787-88 (Tex. 1979). 

 The negligent-implementation theory of liability does not itself waive immunity. 
City of Orange v. Jackson, 927 S.W.2d 784, 786 (Tex. App.-Beaumont 1996, no
writ). It arises only after a plaintiff has established a waiver of immunity under some
other provision of the Texas Tort Claims Act. Id. Accordingly, a plaintiff has to state
a waiver of immunity under some provision of section of 101.021 of the civil practice
and remedies code before he can invoke a claim of negligent implementation of policy. 
Id. We have previously noted that appellees have attempted to raise a claim for the
use of tangible personal property, namely, an"inadequate and misleading sign." 
However, we must further consider whether the claim made falls within the
discretionary-function exclusion. (16)

a. Negligent Implementation and Discretionary Action

 As discussed, supra, a governmental unit may be held liable for the negligent

implementation of policy but not the negligent formation of policy. Terrell, 588
S.W.2d at 788. The formulation of policy includes the determining of the method of
performing the decided action. Id. Thus, for the purpose of the discretionary action
exception, the method of performing an action is synonymous with the decision or
plan as to how the act is to be performed and thus exempt. Id.

 Appellees do not contest that, as to the matter of decisions to warn or not
warn of dangerous conditions, the courts have held that such decisions were
discretionary and so exempt from the waivers of the tort claims act. However, they
argue that, in the instant case, they are not attacking the decision to warn but the
means of carrying out that decision. Specifically, they claim that GBRA formulated "a
policy to protect the public from the dangerous condition existing at the salt barrier"
but negligently implemented it by erecting an "inadequate and misleading sign." (17) 

 However appellees' arguments do not take into account the Terrell definition of
formulation which expressly includes the selection of method. Id. In the specific area
of warnings and means of warning, the supreme court has held that not only is the
decision to warn a discretionary one, but the decision as to the method of warning is
likewise discretionary. State v. San Miguel, 2 S.W.3d 249,251 (Tex. 1999)(decision
to use barrels and signs as a warning device was a discretionary policy decision); State
v. Rodriguez, 985 S.W.2d 83, 86 (Tex. 1999)(claim that detour was unreasonably
dangerous and had inadequate warning signs did not state a claim under the tort
claims act because the design of the detour was a discretionary act). Appellees
concede that GBRA had the discretion to not provide any warning at all, and also to
choose to use a sign as a warning device, but assert that the wording used on the sign
was negligent and not part of a policy decision and thus a negligent implementation
of the safety policy. (18) Appellants essentially argue that once GBRA decided to warn
of the danger, the failure to utilize a means that would successfully do so is a
negligent implementation of the policy. We do not read the discretionary-function
exemption, nor the cases that cite it, so narrowly. The supreme court, in holding that
decisions about what kind of safety features to install on highways fall under the
discretionary-function exemption has stated, "[a] court should not second-guess a
governmental unit's decision about the type of marker or safety device that is most
appropriate." San Miguel, 2 S.W.3d at 251. Whether to use a large sign, a small
sign, a yellow sign, a white sign, a sign that says "stay out" or a sign that says
"danger," would be a decision related to the method of warning and thus the type of
safety device used. To hold otherwise would basically place courts (and juries) in the
position of deciding whether the governmental agency made the right decision as to
how to warn of the danger or whether some other method (e.g., a larger sign, different
color, different words) would have been more appropriate - the exact review
prohibited by the San Miguel court. Appellees do not allege that the sign was
knocked down, obscured by brush or mud, never installed despite a specific decision
to install, illegible, or otherwise negligently installed or maintained. They challenge
GBRA for choosing to warn with the specific wording utilized on the sign which they
allege was "inadequate and misleading." GBRA's decision to use this method of
warning was discretionary and so exempt from the waiver of the tort claims act. Id.

Appellees' Negligence Per Se Claim under Water Code Section 11.050

 The final attempted claim stated in the petition is that of negligence per se for
violation of section 11.050 of the Water Code. (19) Tex. Water Code Ann. §11.050
(Vernon 2000). In its final issue before us on appeal, GBRA asserts that the trial court
improperly failed to grant the plea to the jurisdiction as to appellees' claim under water
code section 11.050, because such provision does not provide an independent cause
of action and, even if it did, it would be barred by sovereign immunity. Appellees
respond that they made no attempt to raise a separate cause of action but simply
meant to allege a legal duty which they assert GBRA failed to observe, arguing that
the alleged violation was negligence per se.

 Despite appellees' assertions that they are not raising a distinct cause of action
under the water code, they are obviously attempting to raise a separate claim for
negligence per se arising out of GBRA's failure to man the barrier in alleged violation
of the statute. Without determining whether this statute is applicable to GBRA, or
whether it raises an independent cause of action, we note that, even if a duty existed
under this section, appellees would still have to plead a waiver of immunity as to this
claimed negligence per se. Mendez v. San Benito/Cameron County Drainage Dist. No.
3, 45 S.W.3d 746, 756 (Tex. App.-Corpus Christ 2001, pet. denied). Appellees did
not plead any independent waiver of immunity as to such a violation, nor would such
a claim fall under the "use or condition" of tangible personal or real property waiver of
section 101.021(2). See Vela v. Cameron County, 703 S.W.2d 721, 724-25 (Tex.
App.-Corpus Christi 1985, writ ref'd n.r.e.)(failure to comply with statute requiring
counties to employ lifeguards at beaches did not come within the condition or use of
tangible personal or real property waiver of sovereign immunity). Likewise, such a
complaint does not raise a claim for a premise defect waiver. People are not real
property nor are they part of the premises and so the lack of a person cannot be a
premise defect. See Lang, 35 S.W.3d at 640 (defining real property). Arguably,
appellees might claim that the failure to man the barrier is one means by which GBRA
failed to make safe the dangerous condition alleged in their premise defect claim. (20) 
However GBRA did not have a duty to warn or make safe but only owed decedents
the duty owed to trespassers. We find, therefore, that appellees' complaint of GBRA's
failure to man the barrier does not state a claim under the tort claims act, regardless
of whether or not it was an applicable statutory duty.


Conclusion

 We find that appellees failed to state a claim which fell within the waiver
provisions of the Texas Tort Claims Act and sustain appellant's issues on appeal. As
we do not find the petition incurably defective, we must allow appellees an opportunity
to amend their pleadings and allege a cause of action within the trial court's
jurisdiction. Peek, 779 S.W.2d at 804-05. If they are unable to do so, or choose not
to, then dismissal is necessary. Tex. Ass'n of Bus., 852 S.W.2d at 446. We
therefore reverse the decision of the trial court denying the plea to the jurisdiction and
remand this cause for further proceedings commensurate with this opinion. 

 

 ERRLINDA CASTILLO

 Justice


Publish.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 25th day of July, 2002.

 
1. 
 
 
 
 § - 
 § 
 
2. 
 
 
3. Tex. Civ. Prac. & Rem. Code Ann. §§101.001-.109 (Vernon 1997 & Supp. 2002).
4. In common parlance the gates are known as "spill gates."
5. 
 
6. Despite the wording of this issue, it appears the chief complaint therein is that the appellees
did not properly allege a condition of property that proximately caused the deaths at issue. This
complaint will be considered along with the others raised.
7. Tex. Water Code Ann. §11.050 (Vernon 2000). 
8. Both briefs also mention the failure to use a warning cable but there is no claim regarding a
cable in the first amended petition. 

9. The petition does not name any specific employees or agents.
10. We note that GBRA argues on appeal that decedents were aware of the condition of the
barrier and the currents created by the barrier. However we are bound to accept the allegations in the
petition as truthful, unless the defendants plead and prove otherwise. Cont. Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). While GBRA provided evidence to the trial court that
suggested that one decedent might have known, the evidence was far from being sufficiently conclusive
to demonstrate the falsity of appellees' pleadings. 
11. See Tex. Civ. Prac. & Rem. Code Ann. §75.003(e)(Vernon Supp. 2002).
12. GBRA also attacks the showing of causation of injury by the saltwater barrier. However, as
we have found that: 1) no claim has been raised as to the use of the saltwater barrier in the petition
before us; 2) no claim was raised as to the "condition" of the saltwater barrier separate from the
premise defect claim; and 3) the premise defect claim was inadequately pled, we need not determine
whether the pleadings demonstrated a nexus between the saltwater barrier and the deaths.
13. Specifically, there was testimony that the boaters passed a "big huge sign saying do not enter
for so many feet" which the driver of the boat ignored.
14. In reference to their claim of "failure to correct," appellees do not provide any specific
allegations, but construing the claim liberally and considering other allegations in the petition, we assume
the claim relates to the failure to erect other safety devices such as barriers. There is no claim in the
petition that the barrier itself was defective and needed correction. The "failure to man" claim we
consider separately.
15. Appellees also claim negligent implementation of policy by GBRA's failure to erect other
barriers. As previously noted, this is a prohibited attempt to raise a claim of "non-use" of property and
so does not waive the State's immunity. Kassen v. Hatley, 887 S.W.2d 4,14 (Tex. 1994). Hence we
do not address the "other barriers" claim.
16. We also must consider whether the deaths were proximately caused by the use of the tangible
personal property. There must be more than "mere involvement" of property in order to raise a claim 
of waiver of immunity due to the use or condition of property under the tort claims act and "property
does not cause injury if it does no more than furnish the condition that makes the injury possible." Dallas
County MHMR v. Bossley, 968 S.W.2d 339, 342-43 (Tex. 1998). However, in light of our resolution
on the question of the discretionary-function exemption, we need not reach the issue of causation and
so do not address it. 
17. Appellees also allege a negligent implementation of policy by "not protect[ing] decedents"
but, since this claim does not allege the use or condition of tangible property, it does not state a claim
under section 101.021(2) of the tort claims act. See Tex. Civ. Prac. & Rem. Code Ann.
§101.021(2)(Vernon 1997). 
18. Appellees do not reference a specific safety policy but argue generally that GBRA had a policy
to protect the public from the dangers of the saltwater barrier. For the purpose of this opinion, we
assume such policy but note that a general policy goal by a governmental agency to keep the public safe
does not make the agency liable for all failures to warn of all possible dangers in all situations under its
control. See Tarrant County Water & Improvement Dist. No.1 v. Crossland, 781 S.W.2d 427, 433
(Tex. App.-Fort Worth 1989, writ denied).
19. That provision, entitled "Tidewater Gates, Etc." reads:


 (a) An appropriator authorized to take water for irrigation, subject to the laws of the
United States and the regulations made under its authority, may construct gates or
breakwaters, dams, or dikes with gates in waters wholly in this state, as necessary to
prevent pollution of the fresh water of any river, bayou or stream due to the ebb and
flow of the tides of Gulf of Mexico.


 (b) The work shall be done in such a manner that navigation of vessels on the stream
is not obstructed and where any gate is used, the appropriator shall at all times keep a
competent person at the gate to allow free navigation. 


 (c) A dam, dike, or breakwater constructed under this section may not be placed at any
point except where the Gulf tides ebb and flow and may not be constructed so as to
obstruct the flow of fresh water to any appropriator or riparian owner downstream.


 Tex. Water Code Ann. §11.050 (Vernon 2000).

 
20. Appellees also argue that this is a non-discretionary duty and thus negates GBRA's
discretionary-function exemption argument. However, we do not even reach GBRA's discretionary-function exemption argument in the context of premise defects as we find that the pleadings themselves
fail to raise a claim under the requirements of the recreational use statute.