**Martin PEREZ, Appellant**

v.

**CITY OF DALLAS, Appellee.**

No. 05–05–00205–CV.

Court of Appeals of Texas, Dallas.

Dec. 13, 2005.

Daniel P. Clark, Law Office of Daniel P. Clark, P.C., Dallas, for appellant.

Patricia Medrano, Assistant City Attorney, Dallas, for appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion by Justice LANG.

Martin Perez sued the City of Dallas under a theory of premises liability for injuries he sustained when he fell from the bed of his truck into an open pit at a trash transfer station owned and operated by the City. The trial court granted the City of Dallas's plea to the jurisdiction where it claimed sovereign immunity and dismissed Perez's claim against the City. In four points on appeal, Perez contends the trial court erred in granting the City's plea to the jurisdiction, asserting that the City's sovereign immunity was waived because the City's trash disposal pit was an unreasonably dangerous condition, i.e., it constituted a premises defect. We decide Perez's points against him and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2002, Perez drove his truck to the Northwest (Bachman) Transfer Station to dispose of his personal trash. The Bachman Transfer Station, which is owned and operated by the City of Dallas, is an enclosed location for disposing of trash. Upon demonstrating to a City employee that he was a resident of Dallas, Perez was directed by the City employee where to park in order to deposit his trash. He backed his truck up to the edge of the concrete pit where trash is deposited, climbed into the bed of the truck, and began unloading his trash. While unloading his truck, Perez fell from the bed of his truck into the concrete pit. He fractured

his wrist and suffered a comminuted fracture to his right ankle.

Perez brought this suit against the City claiming in his original and amended petitions that the cause of his injuries was a premises defect at the transfer station. He asserts that his pleadings and evidence submitted in response to the City's plea to the jurisdiction reflect a waiver of sovereign immunity by the City based on the alleged premises defect and that he has met his burden to create at least a fact question as to the trial court's jurisdiction. In particular, he asserts in his petitions that the alleged premises defect is a "drop-off" of seven to eight feet at the open trash pit, which was not protected by a guardrail, which he states Dallas Building Code section 1716 required, coupled with directions for use of the pit given to him by the City's employee, in accordance with City policy.

The City filed a plea to the jurisdiction, claiming sovereign immunity. The City challenged the existence of jurisdictional facts, contending that Perez had not pled a premises defect, or in the alternative, that the City's facility, its design, and any limitations on its use fall within the discretionary function exception to waiver of immunity pursuant to section 101.056 of the Texas Civil Practice and Remedies Code. Evidence was submitted by both parties to support their respective positions. Perez appealed after the trial court granted the City's plea.

## II. STANDARD OF REVIEW

A plea to jurisdiction contests a trial court's subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *Benefit Realty Corp. v. City of Carrollton,* 141 S.W.3d 346, 348 (Tex.App.-Dallas 2004, pet. denied). The purpose of the plea "is not to force the plaintiffs to preview their case on the mer-

its, but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Whether a court has subject matter jurisdiction is a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002); *Dallas County v. Wadley,* 168 S.W.3d 373, 376 (Tex.App.-Dallas 2005, pet. denied). Accordingly, we review a challenge to the trial court's subject matter jurisdiction de novo. *Thompson v. City of Dallas,* 167 S.W.3d 571, 574 (Tex. App.-Dallas 2005, pet. filed) (quoting *Miranda,* 133 S.W.3d at 228); *Benefit Realty Corp.,* 141 S.W.3d at 348.

In *Miranda,* the Texas Supreme Court identified the regimen courts are to follow in analyzing whether a plea to the jurisdiction should be granted. *See Miranda,* 133 S.W.3d at 226–27. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.; Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). "However, if the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda,* 133 S.W.3d at 227; *see Bland,* 34 S.W.3d at 555 (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda,* 133 S.W.3d at 227. "However, if the relevant evidence is undisputed or fails to raise a fact question on

the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.*

## III. APPLICABLE LAW

### A. *Premises Liability and Sovereign Immunity*

■ In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits against the State or other governmental units unless the State consents to suit. *Miranda,* 133 S.W.3d at 224; *Wadley,* 168 S.W.3d at 376. The sovereign immunity of the State also applies to the benefit of a municipality to the extent the municipality engages in the exercise of governmental functions. *See City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997). The Texas Tort Claims Act provides for waiver of sovereign immunity, including immunity from lawsuit, under limited circumstances. *Miranda,* 133 S.W.3d at 224; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2005). Thus, as a political subdivision of the State, the City of Dallas is immune from suit except to the extent its immunity is waived under the Act.

■ The Tort Claims Act expressly waives sovereign immunity in three areas: (1) property damage and personal injury caused by the use of publicly owned automobiles (section 101.021(1)); (2) personal injury caused by a condition or use of tangible personal or real property (section 101.021(2)); and (3) claims arising out of premises defects (section 101.022). *Wadley,* 168 S.W.3d at 376; *see Miranda,* 133 S.W.3d at 225. Under the Texas Tort Claims Act, sovereign immunity is waived for personal injury and death caused by a condition or use of tangible personal or real property if the governmental unit would be liable to the claimant according to Texas law if it were a private person.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). Liability for premises defects is implied under section 101.021(2) because a premises defect arises from a condition existing on real property. *City of Midland v. Sullivan,* 33 S.W.3d 1, 6 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.); *Lamar Univ. v. Doe,* 971 S.W.2d 191, 195 (Tex.App.-Beaumont 1998, no pet.). If the condition of real property giving rise to the waiver of immunity is a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a). However, if the claimant pays for the use of the premises, the limitation of duty under section 101.022 does not apply and the governmental entity owes the claimant the duty owed to an invitee. *See id.* The duty to an invitee "requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware." *State Dep't of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992).

The Texas Tort Claims Act creates certain exceptions to the waiver of sovereign immunity. Section 101.056 provides that the waiver provisions of the Act do not apply to claims based on: "(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or (2) the governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.056. This latter provision is commonly referred to as the "discretionary function" exception. *See Mitchell v. City of Dallas,* 855 S.W.2d 741, 745 (Tex. App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994).

The discretionary function exception to waiver of sovereign immunity is designed to avoid judicial review of governmental policy decisions. *Mitchell,* 855 S.W.2d at 745; *see also State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). The " '[d]esign of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions.' " *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002) (quoting *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999)). Designs for a building or other municipal premises are discretionary and therefore immunity from liability applies. *Mitchell,* 855 S.W.2d at 745. Additionally, decisions regarding the installation of safety features are discretionary decisions for which a governmental entity may not be sued. *See, e.g., Ramirez,* 74 S.W.3d at 867; *State v. Miguel,* 2 S.W.3d 249, 251 (Tex.1999).

While a governmental entity is immune from liability if an injury results from the formation of policy, a governmental entity is not, however, immune if an injury is caused by the negligent implementation of that policy. *Mitchell,* 855 S.W.2d at 745; *see also Terrell,* 588 S.W.2d at 787–788. Thus, sovereign immunity is preserved for even negligent discretionary formulation of policy, but not for the negligent implementation of the policy at the operational level. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex. 1995); *Terrell,* 588 S.W.2d at 787–788; *Guadalupe–Blanco River Auth. v. Pitonyak,* 84 S.W.3d 326, 342 (Tex.App.-Corpus Christi 2002, rule 53.7(f) mot. for extension of time granted). However, the negligent implementation theory of liability does not itself waive immunity. *See Pitonyak,* 84 S.W.3d at 342; *City of Orange v. Jackson,* 927 S.W.2d 784, 786 (Tex.App.-Beaumont 1996, no writ). A plaintiff must first es-

tablish a waiver of immunity under some other provision of the Texas Tort Claims Act before he can invoke a claim of negligent implementation. *See Pitonyak,* 84 S.W.3d at 342; *Jackson,* 927 S.W.2d at 786. Finally, "a governmental entity's right of sovereign immunity is [not] waived by the negligent implementation of policy ... if the death or injury involved did not arise from the use or condition of tangible personal property or from the operation or use of a motor-driven vehicle." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bruen,* 92 S.W.3d 24, 28 (Tex.App.-San Antonio 2002, pet. denied) (quoting *Jackson,* 927 S.W.2d at 786); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A).

## B. Statutory Construction

Because Perez argues that section 1716 of the 1973 Dallas Building Code applies to the transfer station and the City disputes that it applies, we must address the rules of interpretation for municipal ordinances. The same rules apply to the construction of municipal ordinances that apply to the construction of statutes. *Mills v. Brown,* 159 Tex. 110, 316 S.W.2d 720, 723 (1958); *Seawall East Townhomes Ass'n, Inc. v. City of Galveston,* 879 S.W.2d 363, 364 (Tex.App.-Houston [14th Dist.] 1994, no writ). Matters of statutory construction are legal questions. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex.2000); *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). Therefore, we review the issue de novo. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003).

Where the construction of municipal ordinances is involved, the primary duty of this Court is to carry out the intentions of the municipal legislative body. *Bolton v. Sparks,* 362 S.W.2d 946, 951 (Tex.1962). In doing so, we look first to the plain meaning of the words of the

provisions. *Bd. of Adjustment of the City of San Antonio v. Wende,* 92 S.W.3d 424, 430 (Tex.2002); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999); *Liberty Mut. Ins. Co. v. Garrison Contractors,* 966 S.W.2d 482, 484 (Tex.1998); *Computek Computer & Office Supplies, Inc. v. Walton,* 156 S.W.3d 217, 223 (Tex.App.-Dallas 2005, no pet.). If the statutory language is unambiguous, we must adopt the interpretation supported by the plain language of the provision unless that interpretation would lead to absurd results. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex.2004); *Fitzgerald,* 996 S.W.2d at 865; *see also Tune v. Dep't of Pub. Safety,* 23 S.W.3d 358, 363 (Tex.2000) ("We must enforce the plain meaning of an unambiguous statute."); *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985) ("Unless a statute is ambiguous, we must follow the clear language of the statute."); *Fenet v. McCuistion,* 105 Tex. 299, 147 S.W. 867, 869 (1912) (holding that we adopt the construction that avoids absurd results).

■■■■■■■ If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald,* 996 S.W.2d at 866. When interpreting a statute or municipal ordinance, we read words and phrases in context and construe them according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). Words are given their ordinary meaning. *See Fitzgerald,* 996 S.W.2d at 866; *Jones v. Fowler,* 969 S.W.2d 429, 431 (Tex.1998); *Garrison Contractors,* 966 S.W.2d at 484; *see also In re BACALA,* 982 S.W.2d 371, 380 (Tex.1998) (discussing interpretation of civil statutes). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not considered vague and indefinite. *One Thousand Four Hundred Sixty Two Dollars in U.S. Currency and One 1982 Buick v. State,* 774 S.W.2d 17, 20–21 (Tex.App.-Dallas 1989, writ denied) (citing *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App.1978)). Legal or other well-accepted dictionaries are a method of determining the ordinary meaning of certain words. *See Pratt–Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 833 (Tex. App.-Dallas 2003, pet. denied); *Rivas v. State,* 787 S.W.2d 113, 115 (Tex.App.-Dallas 1990, no pet.); *Corpus Christi v. Bayfront Assocs.,* 814 S.W.2d 98, 104 (Tex. App.-Corpus Christi 1991, writ denied).

## IV. DISCUSSION AND ANALYSIS

■■■■■■■ In this case, Perez alleges in his second amended petition that the City's sovereign immunity was waived because the unguarded trash disposal pit is a premises defect. The transfer station disposal location of which Perez complains in his second amended petition is an open pit with a drop-off of seven to eight feet, which is not protected by a guardrail. He argues that the unguarded pit, along with the requirements imposed on his use of the premises by the City's operational policies and the directions given to him by the employees of the transfer station, constituted an unreasonably dangerous condition, of which the City was aware, and which caused his injuries. Perez further alleges that the placement of a guardrail at the disposal pit was required by section 1716 of the 1973 City of Dallas Building Code and the failure to comply with section 1716 removes the City's design decision regarding the transfer station from the discretionary function exception. In its plea and here, the City contends that Perez failed to adequately plead or submit any evidence of a waiver of immunity from suit for a premises liability claim under the Texas Tort Claims Act. The City asserts that no premises defect has been alleged

which falls within the Texas Tort Claims Act. Moreover, even if a premises defect was successfully alleged, the design of the pit is within the discretionary function exception, an exception to waiver of sovereign immunity. We agree with the City that immunity from suit is not waived and that the trial court did not err in granting the plea to the jurisdiction.

In this case, the City challenges the pleadings by contending that Perez did not plead a premises defect claim. Under the analytical framework articulated in *Miranda*, we must determine whether the pleader has alleged facts affirmatively demonstrating the trial court's jurisdiction over the matter when a plea to the jurisdiction challenges the pleadings. *See Miranda*, 133 S.W.3d at 226. However, evidence submitted by both Perez and the City was before the trial court when the plea to the jurisdiction was granted. Specifically, the City offered evidence to support its contention that no jurisdictional facts existed. Accordingly, we proceed to the next step directed by *Miranda*, to consider the relevant evidence submitted by the parties as necessary to resolve the issues raised regarding the existence of jurisdictional facts. *Id.* at 227. In doing so, we must determine whether the evidence creates a fact question regarding the jurisdictional issue. Based on our review of the pleadings and the evidence presented by the parties, we conclude it does not.

We need not decide whether the trash pit without guardrails is a premises defect since the alleged defect relates to the design of the transfer station. Design decisions by the City are discretionary under section 101.056. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056; *see also Ramirez*, 74 S.W.3d at 867; *Rodriguez*, 985 S.W.2d at 85; *Mitchell*, 855 S.W.2d at 745. Thus, under section 101.056, unless the City was required by law to have guard-

rails around the pit, the City's discretionary decision regarding the design of the pit cannot be the basis for a claim of waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056.

In an attempt to overcome the discretionary function exception, Perez claims that section 1716 of the 1973 City of Dallas Building Code requires the City to have guardrails around the pit. Under section 1716,

> All unenclosed floor and roof openings, open and glazed sides of landings and ramps, balconies and porches which are more than 30 inches above grade or floor below, and roofs used for other than service of the building, shall be protected by a guardrail. Guardrails shall be not less than 42 inches in height. Open guardrail and stair railings shall have intermediate rails or an ornamental pattern such that a sphere 9 inches in diameter cannot pass through. The height of stair railings on open sides may be as specified in Section 3305(I) in lieu of providing a guardrail. Ramps shall, in addition, have handrails when required by Section 3306. EXCEPTION: Guardrails need not be provided on the loading side of loading docks.

It is Perez's position that the requirement of a guardrail contained in section 1716 constitutes an act that the City was required to perform under section 101.056 of the Tort Claims Act. He urges this Court to determine that the exception for loading docks is inapplicable to the pit at the transfer station because, according to Perez, the pit does not conform with the common purposes and functions of a loading dock, which he claims are to provide for the easy crossing, back and forth, of men, machines, or materials between a building and the loading surface of a truck or railcar.

The City contends that section 1716 does not apply to the transfer station because the transfer station is an enclosed location which does not fall within any of the terms mentioned in section 1716. The City notes that, by its own terms, section 1716 applies to "unenclosed floor and roof openings, open and glazed sides of landings and ramps, balconies and porches." Furthermore, the City contends that even if section 1716 does apply to the transfer station, the exception for loading docks also applies, and there is no dispute that the side of the pit was for unloading trash.

Our construction of section 1716 need not address whether it applies to the "enclosed" premises at the transfer station. Rather, we need only address whether the exception for "loading docks" applies to the City's facility. Construction of section 1716 is a legal matter. *See Dallas Morning News,* 22 S.W.3d at 357. Accordingly, because section 1716 is unambiguous, we construe the term "loading dock" according to its plain meaning. *See Fitzgerald,* 996 S.W.2d at 865; *Walton,* 156 S.W.3d at 224.

While the term "loading dock" is not defined in section 1716, the plain meaning of the words "loading dock" in section 1716 indicates a place where things are loaded or unloaded. Specifically, the term "load" is defined by Webster's Dictionary as "[t]o put a load in or on." WEBSTER'S THIRD INT'L DICTIONARY 1325 (1981); *see also Pratt–Shaw,* 122 S.W.3d at 833; *Rivas,* 787 S.W.2d at 115 (both stating that legal or other well-accepted dictionaries are a method of determining the ordinary meaning of certain words). The definition of a "dock" includes "a place for the loading or unloading of materials (as from ships or carts) or for their storage." WEBSTER'S THIRD INT'L DICTIONARY 669; *see also Pratt–Shaw,* 122 S.W.3d at 833; *Rivas,* 787 S.W.2d at 115. "Unloading" is the

very act in which Perez was engaged at the time his injuries occurred. Even if section 1716 were to apply here generally, Perez has not articulated a convincing reason why the loading dock exception does not exclude the transfer station from the guardrail requirement. Nevertheless, we conclude that, even if section 1716 were applicable, the exception excludes the premises in question and section 1716 does not require guardrails on the premises where Perez was injured. Accordingly, the design for the premises in question is a discretionary act and sovereign immunity has not been waived for even an alleged premises defect under the Texas Tort Claims Act.

Perez also claims that the directions given by the City employees at the transfer station regarding his use of the trash pit amount to negligent implementation of policy and do not qualify for immunity. We disagree.

The negligent implementation of policy theory does not itself waive sovereign immunity. Waiver of immunity must be demonstrated under some provision of the Texas Tort Claims Act before a claim of negligent implementation of policy can be invoked. *See Pitonyak,* 84 S.W.3d at 342; *Jackson,* 927 S.W.2d at 786. Additionally, "[a] governmental entity's right of sovereign immunity is [not] waived by the negligent implementation of policy ... if the death or injury involved *did not arise from* the use or condition of tangible personal property or from the operation or use of a motor-driven vehicle." *Bruen,* 92 S.W.3d at 28; *Jackson,* 927 S.W.2d at 786–87 (emphasis added); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). Because waiver of immunity has not been demonstrated under a provision of the Texas Tort Claims Act and because Perez's alleged negligent implementation claim did not arise from the use or condition of tangible personal

property or the operation or use of a motor-driven vehicle, Perez's claim of negligent implementation of policy is unavailing.

Perez has raised and combined separate recognized legal propositions to support his claim of waiver of sovereign immunity: a premises defect due to the absence of a guardrail around an open garbage pit and negligent implementation of policy due to allegedly faulty directions given by City employees, pursuant to City policy. Whether we analyze these propositions individually or in combination, we conclude no fact question is raised as to the jurisdictional issue by Perez's amended petition or by the evidence submitted. Immunity from liability has not been waived. We decide Perez's points against him.

## V. CONCLUSION

Perez's allegations fail to establish a waiver of sovereign immunity. We decide Perez's points against him and affirm the trial court's order of dismissal.