Reversed and Remanded in Part, Reversed and Rendered
in Part, and Majority and Dissenting Opinions filed June 15, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00161-CV

___________________

 

FORT BEND COUNTY TOLL ROAD AUTHORITY, Appellant

 

V.

 

ZULEIMA OLIVARES, INDIVIDUALLY AND AS THE
REPRESENTATIVE OF THE ESTATE OF PEDRO OLIVARES, JR., AND PEDRO OLIVARES,
INDIVIDUALLY, Appellees



 



 

 

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2008-19417



 



 

 

O P I N I O N

Fort
Bend County Toll Road Authority (“FBCTRA”) presents this accelerated appeal
from the trial court’s denial of its plea to the jurisdiction.  In its plea,
FBCTRA challenged the trial court’s subject-matter jurisdiction over claims
brought by Zuleima Olivares, individually and as representative of the estate
of Pedro Olivares, Jr., and Pedro Olivares (collectively, “appellees”).  

FBCTRA argues
the trial court erred in denying its plea because appellees have not stated
claims for which FBCTRA’s governmental immunity is waived.  In a separate
appeal, Texas Department of Transportation (“TxDOT”), FBCTRA’s co-defendant in
the underlying lawsuit, also challenges the trial court’s denial of its plea to
the jurisdiction.  For reasons outlined below, we reverse and remand in part
and reverse and render in part.

I.   Background

            On January 1,
2007, Pedro Olivares, Jr. and his wife were traveling westbound on the Westpark
Tollway (“Tollway”) near Dairy Ashford Road in Harris County when they were
struck by a vehicle driven by Michael Ladson.  According to appellees, Ladson
was traveling on the Tollway in the wrong direction after entering the
westbound lanes near Gaston Road in Fort Bend County, approximately eight and
one-half miles from the accident scene.  Gaston Road intersects with FM 1093, a
state road controlled by TxDOT, which merges into the Tollway.  Pedro Olivares,
Jr. sustained severe bodily injuries resulting in death.

In their
second amended petition, appellees assert claims against FBCTRA, Fort Bend
County, Harris County, Harris County Toll Road Authority (“HCTRA”), TxDOT, Brown
and Gay Engineers, Inc., and Michael Stone Enterprises, Inc.  The Estate of
Michael Ladson has been designated as a responsible third party.  Appellees
allege FBCTRA is liable for certain premise defects and negligent acts or
omissions involving the intersection at FM 1093-Gaston Road and the Tollway. 
Appellees also contend FBCTRA is liable under a joint enterprise theory.

            FBCTRA filed
a plea to the jurisdiction.  Appellees then filed their first amended petition
and a response to FBCTRA’s plea.  Subsequently, FBCTRA filed a supplemental
plea.  Following the hearing on FBCTRA’s plea, appellees filed their second amended
petition and a supplemental response to FBCTRA’s plea.  FBCTRA then filed a
second supplement to its plea.  On January 28, 2009, the trial court signed an
order denying FBCTRA’s plea.  FBCTRA now appeals the trial court’s denial of
its plea to the jurisdiction.

II.   Interlocutory Appeal and Standard of Review

We have
statutorily-conferred authority to review the trial court’s interlocutory order
denying FBCTRA’s plea to the jurisdiction.  See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (A party may appeal an
interlocutory order that “grants or denies a plea to the jurisdiction by a
governmental unit . . . .”).  Appellate courts strictly construe statutes
authorizing interlocutory appeals.  See State v. Fiesta Mart, Inc., 233
S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  Subsection
51.014(a)(8) authorizes an appeal only when the trial court grants or denies a
plea to the jurisdiction.  An appellate court must consider challenges to the
trial court’s subject-matter jurisdiction on interlocutory appeal, regardless
of whether such challenges were presented to or determined by the trial court. 
See Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 850–51 (Tex. 2000).[1]

We
review the trial court’s ruling on a plea to the jurisdiction de novo.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). 
In a plea to the jurisdiction, a party may challenge either the pleadings or
existence of jurisdictional facts.  Id. at 226–27;
see also Rebecca Simmons & Suzette Kinder Patton, Plea to the
Jurisdiction: Defining the Undefined, 40 St. Mary’s L.J. 627, 651–52
(2009).

When a
defendant challenges the plaintiff’s pleadings, the court’s determination turns
on whether the pleader has alleged facts sufficient to demonstrate subject-matter
jurisdiction.  Miranda, 133 S.W.3d at 226.  To make
this determination, courts should glean the pleader’s intent and construe the
pleadings liberally in favor of jurisdiction.  Id.  If the pleadings do
not contain facts sufficient to affirmatively demonstrate the trial court’s
jurisdiction, but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be
afforded an opportunity to amend.  Id. at 226–27.  If the
pleadings affirmatively negate jurisdiction, a plea may be granted without
allowing plaintiffs an opportunity to amend.  Id. at 227.  The opportunity to amend pleadings
that are insufficient to establish, but do not affirmatively negate,
jurisdiction arises after a court determines the pleadings are insufficient.  White
v. Robinson, 260 S.W.3d 463, 475–76 (Tex. App.—Houston [14th
Dist.] 2008, pet. granted) (citing Tex. A & M Univ. Sys. v. Koseoglu,
233 S.W.3d 835, 839–40 (Tex. 2007)).

When a defendant
challenges the existence of jurisdictional facts, we consider relevant evidence
submitted by the parties.  Miranda, 133 S.W.3d at 227.  We take as true
all evidence favorable to the nonmovant and indulge every reasonable inference
and resolve any doubts arising from such evidence in the nonmovant’s favor.  Id.
at 228.  If the relevant evidence is undisputed or a fact question is not
raised relative to the jurisdictional issue, the trial court rules on the plea
to the jurisdiction as a matter of law.  Id.  If the evidence creates a
fact question regarding the jurisdictional issue, the trial court cannot grant
the plea, and the fact issue will be resolved by the fact finder.  Id. at 227–28.

When
resolution of an issue requires interpretation of a statute, we review under a de novo standard.  Mokkala
v. Mead, 178 S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied).  In construing a statute,
our objective is to determine and give effect to the legislature’s intent.  See
Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). 
If possible, we must ascertain that intent from the language the legislature
selected and should not refer to extraneous matters for intent not expressed in
the statute.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the interpretation
supported by the plain meaning of the words.  St. Luke’s Episcopal Hosp. v.
Agbor, 952 S.W.2d 503, 505 (Tex. 1997).

 

III.   Analysis

            FBCTRA
contends the trial court lacks jurisdiction over appellees’ claims because they
cannot demonstrate that FBCTRA’s governmental immunity has been waived.  Disposition
of whether immunity has been waived is governed by the Texas Tort Claims Act
(“TTCA”).  See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109
(Vernon 2005 & Supp. 2009).

A.        Texas Tort
Claims Act

            Under our
common law, sovereign or governmental immunity defeat a trial court’s subject-matter
jurisdiction.  See Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex.
2004).  The TTCA provides a limited waiver of immunity for “personal injury and
death so caused by a condition or use of tangible personal or real property if
the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.”  Tex. Civ. Prac. & Rem. Code Ann. §
101.021 (Vernon 2005).  For premise-defect claims, the governmental unit
generally “owes to the claimant only the duty that a private person owes to a
licensee,” unless the claim involves special defects or “the duty to warn of
the absence, condition, or malfunction of [traffic-control devices] as is
required by Section 101.060.”  Id. § 101.022(a), (b) (Vernon 2005 &
Supp. 2009).

However,
there are certain exceptions to waiver of immunity under the TTCA.  There is no
waiver when a claim arises from

(1)
the failure of a governmental unit to perform an act that the unit is not
required by law to perform; or 

(2)
a governmental unit’s decision not to perform an act or on its failure to make
a decision on the performance or nonperformance of an act if the law leaves the
performance or nonperformance of the act to the discretion of the governmental
unit.

Id. § 101.056 (Vernon 2005).  “In other
words, the State remains immune from suits arising from its discretionary acts
and omissions.”  Tex. Dep’t of Transp. v. Garza, 70 S.W.3d 802,
806 (Tex. 2002).  Similarly, under subsection 101.060(a), the TTCA does
not waive immunity as to claims arising from

(1) the
failure of a governmental unit initially to place a traffic or road sign,
signal, or warning device if the failure is a result of discretionary action of
the governmental unit; 

(2) the
absence, condition, or malfunction of a traffic or road sign, signal, or
warning device unless the absence, condition, or malfunction is not corrected
by the responsible governmental unit within a reasonable time after notice[.]

Tex. Civ. Prac. &
Rem. Code Ann. § 101.060(a)(1)-(2) (Vernon 2005).  “Under subsection (a)(1), the State retains immunity
for discretionary sign-placement decisions.”  State ex rel. State Dep’t of
Highways and Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 326–27 (Tex. 2002). 
“Under subsection (a)(2), the State retains immunity as long as it corrects a
sign’s defective [condition, absence, or malfunction] within a reasonable time
after notice.”  Id.

B.        Claims Based
on Traffic-Control Devices

            FBCTRA first
challenges appellees’ claims concerning placement, maintenance, and quality of
traffic-control devices at or around the FM 1093-Gaston Road intersection.  FBCTRA
generally argues that these allegations involve exercise of discretion for which
immunity is not waived under the TTCA.

1.         Failure
to Install Traffic-Control Devices

            FBCTRA
challenges for the first time on appeal appellees’ allegation that it failed to
install “non-discretionary” signs and devices after receiving “notice” that
such signs and devices were necessary.  FBCTRA argues these claims are barred
because they pertain solely to discretionary acts.  FBCTRA also challenges
appellees’ allegations that it designed but failed to install warning flashers
and cameras intended to monitor traffic for safety.

In City of Grapevine v. Sipes, the Texas Supreme Court considered
whether a city’s failure to install a traffic signal, after deciding to do so,
fell under the portion of subsection 101.060(a)(2) allowing claims to be
brought under the TTCA when the absence of a traffic-control device is not
remedied within a reasonable time after notice.  195 S.W.3d 689, 692–95 (Tex.
2006).  Construing subsection 101.060(a)(2) in light of subsection
101.060(a)(1), the court concluded that timing of implementation is
discretionary:

When the City first installs a traffic signal is no less
discretionary than whether to install it.  The timing of implementation
could be affected by the governmental unit’s balancing of funding priorities,
scheduling, traffic patterns, or other matters; to impose liability for the
failure to timely implement a discretionary decision could penalize a
governmental unit for engaging in prudent planning and paralyze it from making
safety-related decisions.  This sort of planning and execution is precisely the
type of discretionary act for which the TTCA retains immunity.  Thus, when
subsections (a)(1) and (a)(2) are read together, (a)(2) logically applies only
to those traffic signals that have already been installed.

Id. at 694.  Therefore, FBCTRA retained
discretion regarding when to install the warning flashers.  Although
section 101.060 applies only to signs, signals, and warning devices, this rationale
likewise applies to FBCTRA’s decision regarding when to install the planned
traffic-monitoring cameras because a governmental unit’s plans regarding the
safety features of a roadway are discretionary.  See State v. San Miguel,
2 S.W.3d 249, 251 (Tex. 1999) (per curiam) (interpreting section 101.056).

In their
pleadings, appellees do not specify the reason or reasons why FBCTRA
failed to install these devices.  Consequently, appellees’ pleadings do not
affirmatively demonstrate the trial court’s jurisdiction over these claims. 
However, the allegations under consideration do not affirmatively demonstrate
incurable defects in the court’s jurisdiction.  Specifically, it is unclear
whether FBCTRA’s conduct involved negligent implementation of a discretionary
policy decision[2] (e.g., construction
workers negligently overlooked that construction plans ordered installation of
the devices on a certain date), for which immunity is waived under the TTCA, or
a discretionary policy decision (e.g., a decision to postpone installation or
the failure to set an installation date), for which immunity is not waived.  We also cannot discern whether appellees
are alleging that the absence of these items caused a premise defect or simply
failed to warn of an existing defect or make it reasonably safe.[3]  A plaintiff is entitled
to an opportunity to amend if additional facts can overcome the governmental
entity’s immunity from suit.  See Miranda, 133 S.W.3d at 226–27; Koseoglu,
233 S.W.3d at 840.  Accordingly, we reverse the trial court’s denial of FBCTRA’s
plea and remand for the trial court to allow appellees a reasonable opportunity
to amend their pleadings.  See Miranda, 133 S.W.3d at 226–27; see
also Koseoglu, 233 S.W.3d at 839–40.

Finally,
appellees’ petition does not affirmatively demonstrate the trial court’s
jurisdiction over their claim that FBCTRA failed to install “non-discretionary”
signs and devices after receiving notice such signs and devices were
necessary.  Appellees have not alleged facts and circumstances rendering
installation of the signs and devices “non-discretionary.”[4] 
Although we construe pleadings liberally in favor of jurisdiction, we refuse to
allow appellees to avoid the general rule that traffic-control device placement
is a discretionary governmental function by merely describing the act or
omission to be “non-discretionary.”  Therefore, we reverse the trial court’s
order relative to this claim and remand for further proceedings after the trial
court allows a reasonable opportunity for appellees to amend their pleadings.  See
Miranda, 133 S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at
839–40.

2.         Traffic-Control
Device Deficiencies

FBCTRA
also contends its immunity is not waived relative to appellees’ claims based on
certain traffic-control devices that “allow” motorists to travel in the wrong
direction.  In their petition, appellees allege the Tollway/FM 1093 area near
Gaston Road has confusing or misleading signs, signals, and warning devices,
inadequate barricades, and insufficient traffic control.  As a subset of this
claim, appellees allege FBCTRA negligently placed warning signs on the wrong
side of the road at or near the intersection.  Appellees allege these
deficiencies constitute negligent implementation of FBCTRA’s policy to operate
FM 1093 and the Tollway safely.  Appellees also argue that placement of warning
signs on the wrong side of the road resulted in a condition under subsection
101.060(a)(2).

It is
well established that a governmental unit is not immune from liability for an
injury caused by a premise defect that was created through negligent
implementation of policy.  See Mogayzel v. Tex. Dep’t of Transp., 66
S.W.3d 459, 465–66 (Tex. App.—Fort Worth 2001, pet. denied).  A
governmental unit’s negligence in implementing a formulated policy, such as
negligently constructing a designed gabion wall, is not a discretionary
function.  See Mitchell v. City of Dallas, 855 S.W.2d 741,
745 (Tex. App.—Dallas 1993), aff’d, 870 S.W.2d 21 (Tex. 1994). 
“[S]overeign immunity is
preserved for the negligent discretionary formulation of policy, but not for
the negligent implementation of the policy at the [operational/ministerial]
level.”  Guadalupe-Blanco
River Auth. v. Pitonyak, 84 S.W.3d 326, 342 (Tex. App.¾Corpus Christi 2002, no pet.).  Further, a governmental unit
does not relinquish its discretion relative to roadway design by implementing a
general policy to operate roads safely.  See Tarrant County Water Control & Improvement Dist. No.
1 v. Crossland, 781
S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied) (holding State’s
alleged policy to “warn of danger” did “not make the State liable for all
possible failures to warn.  The State may still make specific policy decisions
about the design of State projects . . . .”), overruled on other grounds
by City of Dallas v. Mitchell, 870 S.W.2d 21, 23 (Tex. 1994).  In
other words, a general
policy to build safe roads does not expose a governmental unit to liability for
every conceivable safety deficiency under a negligent implementation of policy
theory of recovery.

A “condition”
under subsection 101.060(a)(2) is defined as “something ‘wrong’ with the
traffic sign or signal such that it would require correction by the State after
notice.”  Garza, 70 S.W.3d at 807; see also Sparkman v. Maxwell,
519 S.W.2d 852, 858 (Tex. 1975) (defining “condition” as “either an intentional
or an inadvertent state of being”).  The term also “refers to the maintenance
of a sign or signal in a condition sufficient to properly perform the function
of traffic control for which it is relied upon by the traveling public.”  Lawson
v. McDonald’s Estate, 524 S.W.2d 351, 356 (Tex. Civ. App.—Waco 1975,
writ ref’d n.r.e.).  “[I]n the cases in which [the supreme court] has
interpreted ‘condition’ in the context of road signs and signals, [it has]
found a waiver of immunity only in those situations in which the sign or signal
was either (1) unable to convey the intended traffic control information, or
(2) conveyed traffic control information other than what was intended.”  Garza,
70 S.W.3d at 807; see also Gonzalez, 82 S.W.3d at 327 (“[S]ubsection
[101.060](a)(2) requires the State to maintain traffic signs in a condition
sufficient to perform their intended traffic-control function.”).

Appellees’
contention that confusing and misleading signs, signals, and warning devices,
inadequate barricades, and insufficient traffic control “allow” drivers to
enter the Tollway in the wrong direction implicates the adequacy of devices
chosen by FBCTRA, a discretionary design decision for which immunity is not
waived.  See San
Miguel, 2
S.W.3d at 251 (“A court should not second-guess a governmental unit’s decision
about the type of marker or safety device that is most appropriate.”); Tex. Dept. of Transp. v. Bederka, 36 S.W.3d 266, 271 (Tex. App.—Beaumont
2001, no pet.) (“Department enjoys immunity from suit regarding its decision to
place a particular traffic control signal, even if the signal fails to make the
premises safe.  The selection of the device employed is not its condition.”), overruled on other grounds by Sipes, 195 S.W.3d 689.

Next,
appellees’ allegation that warning signs were negligently placed on the wrong
side of the road implicates FBCTRA’s decision relative to the location of the
signs, another discretionary decision.  See Gonzalez, 82 S.W.3d at
326–27 (explaining that State retains immunity for its decision relative to
“where” signs should be located); Johnson v. Tex. Dep’t of Transp., 905
S.W.2d 394, 398 (Tex. App.—Austin 1995, no writ) (holding that location of
where to place sign is a discretionary design decision).  Appellees allege “[t]his
negligent placement caused a failure to [warn] motorist[s] that they may be
going in the wrong direction.”  They argue that FBCTRA failed to maintain the signs “in a condition
sufficient to properly perform the function of traffic control for which [they
are] relied upon by the traveling public” because the signs were on the wrong
side of the road.  City of Midland v. Sullivan, 33 S.W.3d 1,
12 (Tex. App.—El Paso 2000, pet. dism’d w.o.j.).  Apparently, appellees contend that
location of the warning signs was a “condition” of signs under subsection
101.060(a)(2) which prevented or hindered the signs from being seen by
motorists.[5]

A
“condition” under subsection 101.060(a)(2) has been held to arise when a sign
is “unable to convey the intended traffic control information.”  Garza,
70 S.W.3d at 807 (citing Lorig v. City of Mission, 629 S.W.2d 699, 701
(Tex. 1982) (holding that a “stop sign’s obstruction from view by trees or
branches is a ‘condition’ of that sign . . . .”)). Appellees, however, allege
that the signs failed to warn motorists because of the location of the
signs.  Appellees do not
cite any authority supporting their contention that location of a sign as
chosen by a governmental entity amounts to a wrongful “condition” of the sign pursuant
to subsection 101.060(a)(2), and we decline to so broaden the meaning of “condition.” 
See Johnson, 905 S.W.2d at 398 (“If a motorist’s
claim that a sign is difficult to see were sufficient to call into question . .
. design discretion, virtually any challenge to the placement of a traffic sign
would suffice to preclude summary judgment on sovereign immunity grounds and
subject the . . . engineering design in this limited area to a jury’s review .
. . .”). [6] 
“[W]hen traffic
engineers decide where to place warning signs around a detour, the State
retains its immunity.”  Gonzalez, 82 S.W.3d at 326–27.  

We also
reject appellees’ argument that FBCTRA failed to maintain the signs in a
condition sufficient to perform their intended function.  “[M]aintenance
involves preservation of a highway as it was designed and constructed.” 
Siders v. State, 970 S.W.2d 189, 193 (Tex.
App.—Dallas 1998, pet. denied) (emphasis added).  If the signs were located as designed, FBCTRA did not
fail to maintain the signs by failing to relocate them.

Appellees
argue FBCTRA did not exercise discretion in installing the subject traffic-control
devices because defendant Brown & Gay Engineers, Inc. drafted construction
plans for the intersection which FBCTRA simply implemented.  Appellees do not
cite any authority for the proposition that a governmental entity loses its discretion
relative to design of a roadway when it constructs the roadway pursuant to an
outside engineer’s design.  In such a situation, the governmental entity
necessarily exercises its discretion to approve and adopt the design when it
constructs the roadway pursuant to the design.  Therefore, appellees’ argument
is unpersuasive.

Finally,
appellees cannot avoid the discretionary-function exception to waiver of
immunity by claiming that FBCTRA failed to implement its policy to operate a
safe road because of the confusing and misleading traffic-control devices; a
general safety policy does not vitiate a governmental unit’s discretion in
roadway design.  See Crossland, 781
S.W.2d at 433.

Accordingly,
appellees’ pleadings do not affirmatively demonstrate jurisdiction over these
claims.  However, the same pleadings do not affirmatively negate the trial
court’s jurisdiction over these claims; appellees do not specify whether the
traffic-control devices were inadequate, or the warning signs were negligently
located, because of FBCTRA’s negligent implementation of the construction
plans.[7]  Consequently, we reverse
the trial court’s order denying FBCTRA’s plea relative to this claim, but
remand for further proceedings after the trial court allows appellees a
reasonable opportunity to amend their pleadings.  See Miranda, 133
S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at 839–40.

3.         Duty
to Maintain Pavement Markers

FBCTRA
next challenges appellees’ claim that pavement markers on FM 1093 were in a
condition of disrepair at the time of the accident such that they failed to
warn motorists they were traveling in the wrong direction.  FBCTRA contends it
was not responsible for maintenance of the pavement markers.

“[A]
premises-liability defendant may be held liable for a dangerous condition on
the property if it ‘assum[ed] control over and responsibility for the
premises,’ even if it did not own or physically occupy the property.”  County
of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002) (quoting City
of Denton v. Van Page, 701 S.W.2d 831, 835 (Tex. 1986)).  “The relevant
inquiry is whether the defendant assumed sufficient control over the part of
the premises that presented the alleged danger so that the defendant had the
responsibility to remedy it.”  Id.

FBCTRA
refers to the “Project Maintenance” section of the agreement between it and
TxDOT (“TxDOT-FBCTRA agreement”), in which it is expressed that TxDOT is to
maintain pavement markers on FM 1093 upon completion of the Fort Bend County
Tollway project.  However, FBCTRA did not present any evidence that the project
was in the post-completion stage at the time of the accident.[8] 
Thus, indulging every reasonable inference and resolving all doubts in
appellees’ favor, FBCTRA has not conclusively established that it had no
maintenance responsibilities relative to the pavement markers.[9]

However,
this conclusion does not end our review of appellees’ pavement markers claim
because we are obliged to ascertain the existence of subject-matter
jurisdiction.  See Univ. Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,
140 S.W.3d 351, 358 (Tex. 2004), superseded by statute on other grounds,
Tex. Gov’t Code Ann. § 311.034 (Vernon 2005).  We identify sua sponte a
pleading deficiency relative to appellees’ claim concerning the condition of
the pavement markers.

Appellees
allege the “pavement markers were in a condition to insufficiently perform
their traffic control function . . . .”  As such, the claim concerns the
condition of a traffic-safety device and, thus, falls under the provisions of
subsection 101.060(a)(2).  Tex. Civ. Prac. & Rem. Code Ann. §
101.060(a)(2); see also Sullivan, 33 S.W.3d at 11 (explaining that
complaint regarding condition of pavement markers falls under subsection
101.060(a)(2)).  To affirmatively demonstrate the trial court’s jurisdiction,
appellees must allege “the condition of [the pavement markers] [was] not corrected
by the responsible governmental unit within a reasonable time after notice[.]” 
Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(2).  This notice can
be either actual or constructive.  See City of Austin v. Lamas, 160
S.W.3d 97, 101–03 (Tex. App.—Austin 2004, no pet.); Robnett v. City of Big
Spring, 26 S.W.3d 535, 538 (Tex. App.—Eastland 2000, no pet.).  Such an
allegation is absent from appellees’ pleadings.  Accordingly, we remand for
further proceedings after the trial court allows appellees a reasonable
opportunity to amend their pleadings pertaining to the condition of pavement
markers.  See Miranda, 133 S.W.3d at 226–27; see also Koseoglu,
233 S.W.3d at 839–40.

 

C.        Negligent
Implementation of Policy to Operate Tollway Safely

We next
consider FBCTRA’s challenge to appellees’ negligent-implementation claims
relative to the Tollway.  As stated supra, a governmental unit is
not immune from suit for negligent implementation of policy, such as negligent
construction or maintenance.  See Mitchell, 855 S.W.2d at
745.

Appellees
allege all defendants agreed “to manage, regulate, oversee, construct,
maintain, and operate . . . the [T]ollway safely,” and “formulated a policy to
monitor the [T]ollway entrances and exits to prevent wrong-way traffic and
unauthorized vehicles on the [T]ollway.”  According to appellees, this policy
was negligently implemented because the Tollway was constructed with minimal
road shoulders and without traditional tollbooths and toll plazas from which
wrong-way drivers could be detected by law-enforcement personnel and other
persons.

We once
again note that FBCTRA’s discretion for roadway design was not limited by any
general policy to operate the Tollway safely.  See Crossland, 781 S.W.2d at 433.  Appellees
also specifically allege that FBCTRA made a policy decision to monitor all
Tollway entrances for wrong-way drivers.  Nevertheless, FBCTRA had discretion
in choosing how to monitor the Tollway, and it is unclear whether appellees are
alleging that the absence of traditional toll booths and toll plazas caused a premise defect or simply failed to warn of an
existing defect or make it reasonably safe.[10]  It is also unclear whether the failure
to construct wider road shoulders resulted from discretionary formulation of
policy or negligent implementation of policy.  See Siders, 970 S.W.2d at 193 (emphasizing that
negligent implementation claim fails because road was constructed as
designed).  Accordingly, we
remand for the trial court to allow appellees a reasonable opportunity to amend
their pleadings.  See Miranda, 133 S.W.3d at 226–27; see also
Koseoglu, 233 S.W.3d at 839–40.

D.        Joint
Enterprise

            Finally, we
consider FBCTRA’s arguments relative to appellees’ joint-enterprise theory of
liability.

An essential element of joint
enterprise is an agreement, express or implied, among the group members.  Seureau
v. ExxonMobil Corp., 274 S.W.3d 206, 222 (Tex. App.—Houston [14th
Dist.] 2008, no pet.).  Joint
enterprise is not an independent basis for waiver of immunity, but may result
in waiver of immunity under the TTCA where a governmental entity would be
liable for another’s negligence if the governmental entity were a private
person.  Id. at 218–19 (quoting Tex. Dep’t of
Transp. v. Able, 35 S.W.3d 608, 613 (Tex. 2000)).

            Appellees
allege that FBCTRA, HCTRA, Fort Bend County, Harris County, TxDOT, and Michael
Stone Enterprises “had an express or implied agreement to [construct,] develop,
operate, and maintain the Westpark Tollway.”  In the statement of facts section
of its brief, FBCTRA expresses, “The evidence demonstrated that there were two
agreements pertaining to the Tollway: an agreement between Harris County and
Fort Bend County [“Counties’ agreement”] . . . ; and [the TxDOT-FBCTRA
agreement.]”  We assume this statement is true because appellees do not contradict
its validity or accuracy.  See Tex. R. App. P. 38.1(g); see also Parker
v. Walton, 233 S.W.3d 535, 537 n.1 (Tex. App.—Houston [14th
Dist.] 2007, no pet.).

As an
initial matter, FBCTRA asserts that it is not a party to the Counties’
agreement.  We agree and thus hold that the Counties’ agreement does not
support a claim of joint-enterprise liability against FBCTRA.  Thus, we turn
our attention to the TxDOT-FBCTRA agreement.

FBCTRA
argues that the TxDOT-FBCTRA agreement cannot support a joint-enterprise theory
of liability because such a theory is proscribed under section 271.160 of the Local
Government Code.  Section 271.160 provides, “A contract entered into by a local
government entity is not a joint enterprise for liability purposes.”  Tex. Loc.
Gov. Code Ann. § 271.160 (Vernon 2005).

Appellees
argue section 271.160 does not apply to FBCTRA because “toll road authority” is
not mentioned in the definition of “local governmental entity.”

“Local government entity” is defined in
relevant part as a

political subdivision
of this state, other than a county or unit of state government, as that term is
defined by Section 2260.001, Government Code, including
a:

. . .

(C)
special-purpose district or authority, including any levee improvement
district, drainage district, irrigation district, water improvement district,
water control and improvement district, water control and preservation
district, freshwater supply district, navigation district, conservation and
reclamation district, soil conservation district, communication district,
public health district, emergency service organization, and river authority.

Id. § 271.151(3)(C) (Vernon 2005).  Apparently,
appellees contend this definition is exclusive.  However, “‘[i]ncludes’ and
‘including’ are terms of enlargement and not of limitation or exclusive
enumeration, and use of the terms does not create a presumption that components
not expressed are excluded.”  Tex. Gov’t Code Ann. § 311.005(13) (Vernon 2005);
see also House of Yahweh v. Johnson, 289 S.W.3d 345, 351 (Tex.
App.—Eastland 2009, no pet.).  Therefore, the absence of “toll road authority”
from the enumerated entities in subsection 271.151(3) does not preclude FBCTRA
from being a local government entity.

FBCTRA
presented with its plea an order by the County Commissioners Court of Fort Bend
County approving the creation of FBCTRA, a “local government corporation.”  A
local government corporation is a “governmental unit” as that term is used in
the TTCA, and its operations “are governmental, not proprietary, functions.”  Tex.
Transp. Code Ann. § 431.108 (Vernon 2007).[11]  “A local government
corporation may be created to aid and act on behalf of one or more local
governments to accomplish any governmental purpose of those local
governments.”  Id. § 431.101(a) (Vernon Supp. 2009).  A local government
corporation has the powers to promote and develop transportation facilities.  See
Tex. Transp. Code Ann. §§ 431.062(b) (Vernon 2007), .101(b) (Vernon Supp.
2009).

As a
local government corporation, FBCTRA acts on behalf of Fort Bend County.  See
Tex. Transp. Code Ann. § 431.003(4) (Vernon 2007).  However, by providing
that local-government corporations are “governmental units” performing
governmental functions, and by imbuing them with “nature, purposes, and
powers,” it is clear the legislature intended such corporations to be separate
and discrete political subdivisions from those they act on behalf of and aid.  See
Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions
Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d 320, 325–26 (Tex. 2006).  In Ben
Bolt, the supreme court recognized that “[t]he only entities expressly
excluded from [the definition of local-government entity under subsection
271.151(2)] are counties and units of state government . . . .”  Id. at
328.  FBCTRA is a political subdivision of the state, but is neither a unit of
state government nor a county.  Hence, FBCTRA is a local-government entity as
defined in subsection 271.151(3) and is entitled to the protections of section
271.160.

Appellees
also argue that section 271.160 is not applicable because the TxDOT-FBCTRA
agreement does not comport with the definition of a contract as used in
subchapter I of the Local Government Code.  In subchapter I, the phrase “Contract subject to this
subchapter” is defined as “a written contract stating the essential terms of
the agreement for providing goods or services to the local governmental entity
. . . .”  Id. at § 271.151(2) (Vernon 2005).  The phrase “contract
subject to this subchapter” is used in several sections of subchapter I.  See
id. §§ 271.152, .154 (Vernon 2005), .153 (Vernon Supp. 2009).  However, the
legislature selected the word “contract,” as opposed to the phrase “contract
subject to this subchapter,” when it drafted section 271.160.  Construing the
term “contract” according to its common usage, it is clear the legislature
intended section 271.160 to refer to any contract entered into by a
local governmental entity.  See Tex. Gov’t Code Ann. § 311.011(a)
(Vernon 2005).[12]  We hold section 271.160
refers to any contract entered into by a local-government entity.  Therefore, the
TxDOT-FBCTRA agreement does not subject FBCTRA to joint-enterprise liability.  Accordingly,
the trial court’s denial of FBCTRA’s plea is reversed and we dismiss appellees’
claim of joint-enterprise liability against FBCTRA for want of jurisdiction.  See
Miranda, 133 S.W.3d at 228.

IV.   Conclusion

We
reverse the trial court’s order denying FBCTRA’s plea and remand for further
proceedings after the trial court allows appellees a reasonable opportunity to
amend their pleadings relative to the following claims:

·       
Premise defect resulting from
failing to install warning flashers, cameras, and non-discretionary signs;

·       
Premise defect resulting from
inadequate barricades, insufficient traffic control, and signs placed on the
wrong side of the road;

·       
Premise defect resulting from
deficient condition of pavement markers; and

·       
Premise defect for constructing
Tollway with minimal shoulders and without traditional tollbooths and toll
plazas.

We
reverse that portion of the trial court’s order denying FBCTRA’s plea
challenging appellees’ claim of joint-enterprise liability against FBCTRA and
render judgment dismissing this claim for want of jurisdiction.

                                                                                                                                                                                                                              /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

 

Panel
consists of Chief Justice Hedges, Justice Seymore, and Senior Justice Hudson.*
(Hudson, J., dissenting).

 









[1]
In previous panel decisions from this court, we expressed that an appellate
court does not have jurisdiction on interlocutory appeal to address grounds not
asserted in the underlying plea to the jurisdiction.  See Galveston Indep.
Sch. Dist. v. Jaco, 278 S.W.3d 477, 479 n.2 (Tex. App.—Houston
[14th Dist.] 2009), rev’d on other grounds, 303 S.W.3d 699 (per curiam);
State v. Clear Channel Outdoor, Inc., No. 14-07-00369-CV, 2008 WL
2986392, at *3 (Tex. App.—Houston [14th Dist.] July 31, 2008, no pet.); Clear
Lake City Water Auth. v. Friendswood Dev. Co., 256 S.W.3d 735,
747 n.14 (Tex. App.—Houston [14th Dist.] 2008, pet. dism’d); Prairie
View A & M Univ. v. Dickens, 243 S.W.3d 732, 736 (Tex. App.—Houston
[14th Dist.] 2007, no pet.); Brenham Hous. Auth. v. Davies, 158 S.W.3d
53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  

 

We are not
bound by these opinions because the Gibson decision is directly on
point.  See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp., No.
14-08-00115-CV, 2010 WL 660166, at *9 (Tex. App.—Houston [14th Dist.] Feb. 25,
2010, no pet. h.) (“[A]bsent a decision from a higher court or this court
sitting en banc that is on point and contrary to the prior panel decision . . .
, this court is bound by the prior holding of another panel of this court.”).

 





[2]
“Negligent implementation” within the context of a claim under the TTCA is
discussed in greater depth infra.

 





[3] To the extent appellees allege that the lack of
traffic-monitoring cameras caused a dangerous condition because there were no
people monitoring the roadway, they fail to allege a premise-defect claim under
the TTCA.  Such a “condition” concerns the activity of people, not the
condition of the roadway itself.  See Tex. Parks & Wildlife Dep’t v.
Garrett Place, Inc., 972 S.W.2d 140, 144 (Tex. App.—Dallas 1998,
no pet.).

 





[4]
To the extent appellees allege the signs were “non-discretionary” because they
were required by the Texas Manual on Uniform Traffic Control Devices (“MUTCD”),
appellees’ allegation that TxDOT “retained the right to supervise and inspect
all signs, barricades, and traffic control plans to insure compliance with the
[MUTCD]” is not an allegation that FBCTRA was required to select and place
signs exactly as specified in the MUTCD.  Compliance with the MUTCD’s
provisions is generally not mandatory.  See Brazoria County v. Van Gelder,
304 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).





[5]
To the extent appellees allege the signs were placed on the wrong side of the
road because their location did not comply with the MUTCD, appellees’
allegation that “[TxDOT] retained the right to supervise and inspect all signs,
barricades, and traffic control plans to insure compliance with the [MUTCD]” is
not an allegation that FBCTRA was required to select and place signs exactly as
specified in the MUTCD.  Compliance with the MUTCD’s provisions is generally
not mandatory.  See Van Gelder, 304 S.W.3d at 454.

 





[6]
We note that in Sparkman, the supreme court held that a red left-turn
arrow which was installed and operated as designed and was intended to direct
left-turning motorists to stop presented a condition because it actually
directed some motorists to proceed.  519 S.W.2d at 856–58.  Therefore, the
governmental entity’s design decision was held to present a condition because
it conveyed traffic-control information other than intended.  In the present
case, while appellees allege the signs were “misleading” and “confusing,” there
are no allegations that the signs conveyed unintended traffic-control
information creating a dangerous premises condition.  Thus, we decline to apply
Sparkman to appellees’ claim.





[7]
See City of Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994)
(“[A]ctions which require obedience to orders . . . are ministerial.”); see
also Siders, 970 S.W.2d at 193 (holding negligent-construction claim
regarding a stop sign was merely a disguised design-defect claim because
plaintiffs’ witnesses admitted road was constructed as designed and plaintiffs
agreed the design plans did not specify the removal of the stop sign).  

 

FBCTRA
contends certain photographs of signage at the FM 1093-Gaston Road intersection
incorporated within design documents of the intersection conclusively establish
the “Do Not Enter” and “Wrong Way” signs were placed in accord with design
plans at the time of the accident.  While these documents appear to indicate
the signs were placed as designed by August 13, 2008, they do not reflect
whether the signs were placed as designed at the time of the accident.  Thus,
we reject FBCTRA’s contention.

 





[8]
In the TxDOT-FBCTRA agreement, “Project” is defined in relevant part as the
“construction of the interchanges connecting the [Tollway] at FM 1464/FM 1093
and at SH 99 . . . .”  FBCTRA does not cite any portion of the record
supporting that the project was complete.  In the statement of facts section of
its brief, FBCTRA expresses, “By the time of the accident on January 1, 2007,
construction of the Tollway in Fort Bend County had been completed.”  Appellees
do not dispute this statement in their brief.  However, even accepting this
statement as true, see Tex. R. App. P. 38.1(g), it does not necessarily
establish that the project was also complete at that time.

 

We also
recognize that both FBCTRA and appellees rely on the “Project Maintenance”
section in making their respective arguments.  However, we refuse to construe
appellees’ reliance on this section as a deliberate admission that the project
is complete.  See Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga, Inc.,
936 S.W.2d 275, 278 (Tex. 1996) (“A judicial admission must be a clear, deliberate, and unequivocal
statement.”).

 





[9]
FBCTRA also mentions, without argument, subsection 224.032(a)(1) of the
Transportation Code which expresses that the State Highway Commission shall
provide for the efficient maintenance of the state highway system.  Tex.
Transp. Code Ann. § 224.032(a)(1) (Vernon 1999).  This language, however, says
nothing about whether other governmental entities can become contractually
obligated to maintain a segment of a state highway. 





[10]
To the extent appellees allege that the lack of toll booths and toll plazas
caused a dangerous condition because there were no people monitoring the
roadway, they fail to allege a premise defect claim under the TTCA.  Such a
“condition” concerns the activity of people, not the condition of the roadway
itself.  See Garrett Place, 972 S.W.2d at 144.





[11] The TTCA defines “governmental unit”
as

(A) this
state and all the several agencies of government that collectively constitute
the government of this state, including other agencies bearing different
designations, and all departments, bureaus, boards, commissions, offices,
agencies, councils, and courts; 

(B) a political subdivision of this state, including
any city, county, school district, junior college district, levee improvement
district, drainage district, irrigation district, water improvement district,
water control and improvement district, water control and preservation
district, freshwater supply district, navigation district, conservation and
reclamation district, soil conservation district, communication district,
public health district, and river authority; 

(C) an emergency service organization; and 

(D) any other institution, agency, or organ of
government the status and authority of which are derived from the Constitution
of Texas or from laws passed by the legislature under the constitution. 

Tex. Civ.
Prac. & Rem. Code Ann. § 101.001(3) (Vernon 2005).





[12]
See also FKM P’ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys., 255
S.W.3d 619, 633 (Tex. 2008) (“We use definitions prescribed by the
Legislature and any technical or particular meaning the words have acquired,
but otherwise, we construe the statute’s words according to their plain and
common meaning unless a contrary intention is apparent from the context, or
unless such a construction leads to absurd results.”).

 











* Senior Justice J. Harvey Hudson sitting
by assignment.