# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00326-CV

**Board of Regents, Texas State University System, and Texas State University-San Marcos, Appellants**

**v.**

**Stephanie Paige Steinbach, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT NO. 10-0281, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellee Stephanie Paige Steinbach brought suit pursuant to the Texas Tort Claims Act (TTCA) seeking damages for personal injuries she sustained when she slipped and fell while descending stairs in her residence hall on the campus of Texas State University–San Marcos. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109. In this interlocutory appeal, appellants Board of Regents, Texas State University System, and Texas State University-San Marcos challenge the district court's order denying their third and fourth supplemental pleas to the jurisdiction, motion for summary judgment, and no-evidence motion for summary judgment. *See id.* § 51.014(a)(8) (allowing interlocutory appeal from denial of plea to jurisdiction by governmental unit). For the following reasons, we reverse the district court's order denying appellants' pleas to the jurisdiction and dismiss Steinbach's claims for lack of jurisdiction.

## BACKGROUND

Steinbach was a student at Texas State University–San Marcos in the spring of 2008, residing in Sterry Hall, a dormitory on the campus. Sterry Hall, a four-story building with a basement, was built prior to 1970. Laundry facilities, an ice machine, and washing sinks are located in the basement. The stairwells in Sterry Hall from the first floor to the basement have two flights of stairs with a landing between the flights, and the stair treads are covered with a rubber material.

On March 6, 2008, Steinbach was doing laundry in the basement of Sterry Hall. She returned to her room by way of one of the stairwells that extends to the basement, and she used a different stairwell that extends to the basement on the way back. She was descending the stairs barefoot from the first floor to the basement when she slipped on a "clear" and "dirty" liquid that appeared to be laundry detergent and fell, breaking bones in her ankle and leg. According to her pleadings, "the liquid had spread across the width of the approximate six foot wide stair" by the time of her fall. No one passed her in the stairwell before the accident, no one was in the stairwell when she fell, and no one admitted to spilling the liquid substance on the stairs. Steinbach also had never seen liquid detergent on the stairs before the day of her fall and did not see it on the stairs on that day until after her fall although she was "looking down" as she was descending the stairs.[1]

At the time of Steinbach's fall, one custodian was assigned to clean the stairwell in which she fell. The custodian cleaned the stairwell around midday on Mondays through Fridays, as

---

[1] In her deposition, Steinbach testified that she fell on "[a]pproximately the third or fourth step," that she thought the liquid was "laundry soap" because of the "texture of it," that she "didn't see [the substance] until after she fell," and "at that point [the substance] had gotten all over [her] clothes."

well as when there was a reported problem. In that case, the custodian would clean the problem area and put up caution signs. Steinbach's fall on March 6, 2008, occurred before the custodian's customary midday cleaning. After Steinbach was taken to the hospital, the assigned custodian and another custodian cleaned and removed the liquid substance.[2]

Steinbach sued appellants in 2010 asserting a premises defect claim under the TTCA. *See id*. §§ 101.021(2), .022(a) (addressing duty owed for premises defect claims). Appellants answered and filed a plea to the jurisdiction and first and second supplemental pleas to the jurisdiction and motions to dismiss, supported by evidence and based on sovereign immunity. Steinbach amended her petition and filed responses to the pleas to the jurisdiction.

Appellants thereafter filed a third supplemental plea to the jurisdiction, a motion for summary judgment supported by evidence, and a no-evidence motion for summary judgment based on their sovereign immunity. Appellants' evidence included: (i) the affidavit of the associate director for the office of facilities, planning, design, and construction at Texas State University–San Marcos, who averred that Sterry Hall was built prior to 1970 and that it "had not undergone any structural renovations since the building was constructed"; (ii) Steinbach's deposition; (iii) the deposition of the custodian who cleaned the stairwell during the work week and the custodian's affidavit, in which she averred that she cleaned the stairs after the fall and that the liquid appeared to be "laundry detergent"; (iv) the affidavit of the associate director of housing and residential life

---

[2] In her deposition, the assigned custodian described the area of the liquid substance after the accident as covering "a few spots above and below the step that it was on," that it appeared to be "clear" laundry detergent, and that she and another custodian cleaned the spill by getting "two or three buckets of water and some mops and just mopped it up and rinsed it, and mopped it and rinsed it, and mopped it and rinsed it."

at Texas State University–San Marcos who averred that she found "no record in the database of any resident slipping on a foreign substance in the stairways of Sterry Hall in the time previous to the incident in this lawsuit"; and (v) the affidavit of the environmental health and safety specialist at Texas State University–San Marcos who averred that she found "no record in the incident log of any employee slipping on a foreign substance in the stairways of Sterry Hall in the time previous to the incident in this lawsuit." The database covered the time period from September 14, 2006, to March 8, 2008, and the incident log covered the period from February 15, 2000, to March 8, 2008.

Steinbach filed a second amended petition, supplemental response to the pleas to the jurisdiction, and response to the motions for summary judgment. In her second amended petition, she asserted premises defect and special defect claims and that her "injuries arose from a condition or use of the tangible personal property by [appellants], i.e., the materials that covered the stairwell."[3] *See id*. §§ 101.021, .022(a), (b) (addressing duty owed for special defect claims). She also complained that the stairwell did not have hand rails on the right side leading to the basement and that the "stairs did not have a 'nose' at the end of the stair that is specifically designed to help prevent the kind of accident that [Steinbach] experienced." Steinbach further alleged that appellants were liable to her for negligence in monitoring the stairwell because they "had actual notice that the stairwell was repeatedly being left in a 'filthy' condition by residents of the dormitory hall" and that

---

[3] In her amended petition, Steinbach alleges that "linoleum" covered the stair treads. The evidence, however, established that the stairs were covered with a rubberized material, and not linoleum.

4

they were negligent "for failing to maintain the safe condition of the stairwell, monitor the status of the stairwell or using inadequate or defective materials on the stairwell."[4]

Appellants filed a fourth supplemental plea to the jurisdiction and a reply to Steinbach's response. Appellants incorporated by reference their third supplemental plea and motions for summary judgment and asserted that the district court lacked jurisdiction over Steinbach's claims because they did not fall within the limited waiver of sovereign immunity provided under the TTCA. Appellants also addressed Steinbach's special defect claim that she asserted in her second amended petition.

Steinbach filed supplemental responses with evidence, including excerpts from the deposition of a former custodian who cleaned Sterry Hall for approximately three years. The former custodian testified that sometimes the residents spilled detergent on the floor of the laundry room

---

[4] In her second amended petition, Steinbach's allegations included that appellants were negligent in failing to:

- "properly inspect and maintain the stairwell to discover the dangerous condition,"

- "give adequate and understandable warnings to Plaintiff of the unsafe condition of the stairwell,"

- "discover and clean the stairwell within a reasonable time,"

- "remove liquid laundry detergent or other substance which caused the slip and fall,"

- "discover and remove liquid laundry detergent or other substance within a reasonable time," and

- "train or supervise maintenance personnel or institute periodic safety checks of stairwells by maintenance personnel."

5

and "sometimes on the stairs." In her responses, Steinbach described the complained-of condition of the property as "clear liquid detergent spilled across a rubbery mat type surface on a steep stairwell." Appellants filed objections to the deposition excerpts of the former custodian and special exceptions to Steinbach's second amended petition.[5]

After a hearing, the district court denied appellants' third and fourth supplemental pleas to the jurisdiction and motions for summary judgment. Appellants then brought this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## ANALYSIS

Appellants raise four issues on appeal challenging the district court's denial of their pleas to the jurisdiction and motions for summary judgment. They argue that the district court erred in denying their pleas and motions because (i) Steinbach failed to demonstrate a waiver of appellants' sovereign immunity; (ii) Steinbach cannot proceed on her general negligence claims once

---

[5] By letter, the district court informed the parties that appellants' objections to the excerpts from the former custodian's deposition were overruled in part and sustained in part. The district court overruled appellants' objections as to whether the former custodian "was told to 'keep an eye on the laundry'" and granted appellants' objections "as to what [the custodian] states she was told actually had occurred." This testimony concerned whether the custodian knew of spills and any girls falling on the stairs. The former custodian's testimony included:

> Sometimes the hall directors come and tell us to just keep an eye on the laundry, right. Since the girls are going down to use the washers, sometimes they spill, like I said, that liquid soap and then they fall. But I never did see nobody.

She also testified that she never cleaned up liquid detergent on the stairs but "on the floor right there by the washer." For purposes of this appeal, we do not consider the testimony that was excluded by the district court based on appellants' objections. The district court also denied in part and granted in part appellants' special exceptions in the same letter ruling, but the parties do not join issue with the special exception ruling in this interlocutory appeal.

6

a premises defect was identified, and she did not plead or prove a negligent condition or use of tangible personal property; (iii) there is no waiver of immunity for discretionary design decisions under section 101.056 of the TTCA, *see id.* § 101.056; and (iv) there is no waiver of immunity for premises defects when the premises was constructed before 1970 pursuant to section 101.061 of the TTCA, *see id.* § 101.061.

**Standard of Review**

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id.* We construe the pleadings liberally in favor of the plaintiff. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

When evidence is submitted that implicates the merits of the case, as is the case here, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Id.* at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the plaintiff to show that a disputed material fact issue exists regarding jurisdiction. *Id.* We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the

jurisdiction, and the fact question will be resolved by the fact-finder. *Id*. at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

**Texas Tort Claims Act**

"In general, the State of Texas retains sovereign immunity from suit." *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam) (citing *Miranda*, 133 S.W.3d at 224). The TTCA, however, provides a limited waiver of immunity for certain tort claims. *See* Tex. Civ. Prac. & Rem. Code § 101.025 (waiving sovereign immunity "to the extent of liability created by this chapter" and allowing person with claim under TTCA to sue governmental unit for damages). Thus, to sue a subdivision of the State for a tort, the pleadings must state a claim under the TTCA. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); *see Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (explaining that plaintiff bears burden of demonstrating waiver of immunity under TTCA). Steinbach acknowledges that appellants are protected from her claims unless they fall within the purview of the TTCA.

Relevant to this appeal, the TTCA permits suit against governmental units for personal injuries "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). Because premises defects arise from a condition on real property, liability for premises defects is implied under section 101.021(2) of the TTCA. *See id.* §§ 101.021(2), .022(a) (addressing duty owed for premises defects); *Perez v. City of Dallas*, 180 S.W.3d 906, 910 (Tex. App.—Dallas 2005, no pet.); *see also Davis v. Comal Cnty. Comm'rs*

8

*Court*, No. 03-11-00414-CV, 2012 Tex. App. LEXIS 5719, at *6 (Tex. App.—Austin July 13, 2012, no pet.) (mem. op.) ("'Premise defects' may be defined generally as defects or dangerous conditions arising from conditions of a premises." (citing *City of Weston v. Gaudette*, 287 S.W.3d 832, 836 (Tex. App.—Dallas 2009, no pet.)).

With respect to premises defect claims, the governmental unit owes the claimant the duty owed to an invitee if the claimant pays for the use of the premises. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a); *Perez*, 180 S.W.3d at 910. A governmental unit also owes the duty owed to an invitee with respect to special defects. *See* Tex. Civ. Prac. & Rem. Code § 101.022(b) (addressing duty owed for special defects); *Hayes*, 327 S.W.3d at 116 (describing conditions that constitute special defects and noting that standard of care with respect to special defects is duty owed to invitee). "The duty to an invitee 'requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware.'" *Perez*, 180 S.W.3d at 910 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)); *see Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (noting that premises owner owes invitee "duty to exercise reasonable care to protect [invitee] from dangerous conditions" that are known or reasonably discoverable but that premises owner is "not an insurer of [invitee's] safety"); *Ogueri v. Texas S. Univ.*, No. 01-10-00228-CV, 2011 Tex. App. LEXIS 2453, at *9–10 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (describing duty governmental unit owed to invitee).

The TTCA also provides exceptions to a governmental unit's waiver of sovereign immunity. Section 101.056(2) provides that TTCA's waiver provisions do not apply to claims based

9

on "a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.056(2). This provision "is commonly referred to as the 'discretionary function' exception" and "is designed to avoid judicial review of governmental policy decisions." *Perez*, 180 S.W.3d at 910–11. The TTCA also "does not apply to a claim based on an act or omission that occurred before January 1, 1970." *See* Tex. Civ. Prac. & Rem. Code § 101.061.

**Claims Based on the Liquid Substance**

In their first issue, appellants argue that Steinbach failed to demonstrate a waiver of their sovereign immunity because the evidence establishes that they did not have actual or constructive notice of the liquid substance on the stairs prior to Steinbach's fall.

The threshold issue for Steinbach's premises and special defect claims that are based on the liquid substance on the stairs is whether appellants had actual or constructive notice of the substance prior to Steinbach's fall.[6] *See Hayes*, 327 S.W.3d at 117 (requiring plaintiff to establish elements of premises defect claim, including notice element, to establish waiver of governmental unit's immunity); *Reece*, 81 S.W.3d at 814 (describing notice element that slip-and-fall plaintiff must satisfy); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264–65 (Tex. 1992) (same); *Hall v. Sonic Drive-In of Angleton*, *Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("The

---

[6] These claims generally are based on appellants' alleged failure to properly inspect, monitor, and maintain the condition of the stairwell; to discover the liquid substance and remove it within a reasonable time; and to warn or post signs of the "unsafe condition of the stairwell."

threshold issue in a premises defect claim is whether the defendant had actual or constructive notice of the allegedly dangerous condition."); *see also Ogueri*, 2011 Tex. App. LEXIS 2453, at \*12–13 (describing actual and constructive notice in context of slip-and-fall suit against governmental unit). Steinbach does not allege that appellants placed the liquid substance on the stairs or that they had actual notice that it was on the stairs prior to her fall; her allegations seek to charge appellants with constructive notice. Because appellants' pleas to the jurisdiction challenged their constructive notice of the liquid substance and they presented evidence to support their pleas, the trial court was required to review the relevant evidence to determine if a fact issue existed. *See Miranda*, 133 S.W.3d at 227.

A premises owner will be charged with constructive notice if "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Reece*, 81 S.W.3d at 814 (citing *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Keetch*, 845 S.W.2d at 265). "[C]onstructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000). "Thus, constructive knowledge can be established by facts or inferences that a dangerous condition could develop over time." *Ogueri*, 2011 Tex. App. LEXIS 2453, at \*13 (citing *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (per curiam)). Relevant to the constructive knowledge determination are the color, dimensions, and conspicuousness of the alleged "dangerous condition." *Reece*, 81 S.W.3d at 816.

The "time-notice rule" to impute constructive knowledge to a premises owner, however, requires some evidence of the length of time the unreasonably dangerous condition existed

11

prior to the injury-causing event. *Id*. at 815–16. Otherwise, constructive knowledge would be imputed the instant a dangerous condition is created, whether or not there was a reasonable opportunity to discover it. *See id*. (noting that "[w]ithout some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition" and rejecting imposition of "strict liability [on owners] for any dangerous condition" on premises); *see also Cox v. H.E.B. Grocery, L.P.*, No. 03-13-00714-CV, 2014 Tex. App. LEXIS 9522, at *8 n.2 (Tex. App.—Austin Aug. 27, 2014, no pet.) (mem. op.) (noting that slip-and-fall plaintiff "is not required to prove exactly when the [substance] was put on the floor but that it had been there long enough that [premises owner] could have discovered and removed it").

Appellants' evidence supporting their plea included Steinbach's deposition testimony and the affidavit and testimony of the custodian who had cleaned the stairwell for several years prior to Steinbach's fall. The custodian testified that she had not cleaned the stairwell on the day of the fall, but that she had not seen liquid detergent on the stairs until after Steinbach's fall. In her deposition, Steinbach testified that she did not see anyone spill the liquid substance on the stairs, did not know how long the liquid substance was on the stairs prior to her fall, and had not seen a liquid substance like that on the stairs before her fall. She testified that she did not pass anyone in the stairwell and had not used that stairwell earlier in the day. It also was undisputed that no one admitted to spilling the liquid substance, and appellants presented evidence that showed that there were no reported incidents of anyone slipping in the stairwell prior to Steinbach's fall.

12

As to the dimensions of the liquid substance, Steinbach testified that it was clear and on one or two steps and that, although she was "looking down" as she descended the stairs, she did not see the liquid until after she fell. She testified:

Q.　When you were going up and down the stairs, were you careful?

A.　Yes.

Q.　I mean, were you looking where you were going?

A.　Yes.

Q.　All right. So you were looking at the steps where the liquid was before you fell. Is that fair?

A.　I was looking down, yes.

Q.　Okay. But you yourself being that close to it did not see it; is that correct?

A.　Yes, that's correct.

She also testified that she believed that the substance was laundry detergent and answered that "[i]t was liquid" when asked: "After you fell and you observed the liquid, did you see any of it look like it was drying or was it liquid–all liquid?"[7]

---

[7] In her deposition, Steinbach also described the liquid as "dirty." She testified as follows:

Q.　Okay. When you saw [the liquid], which was after you fell, did you see any like trash or dirt stuck in the liquid?
A.　It was dirty.
Q.　The liquid was dirty.
A.　Yes, ma'am.
Q.　And that was after you fell.
A.　Yes.
Q.　Okay. Describe what kind of dirt you are talking about.

13

This evidence was sufficient to establish that appellants did not have constructive knowledge of the liquid substance on the stairs prior to Steinbach's fall. *Compare Billmeier v. Bridal Shows, Inc.*, No. 2-08-314-CV, 2009 WL 1176441, at *1, 5–6 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.) (mem. op.) (concluding that testimony from claimant that she did not see "clear, water-like substance" on floor until after she fell and that she did not know how substance came to be on floor or how long it had been there was no evidence of constructive knowledge); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 71–72 (Tex. App.—Austin 1998, no pet.) (concluding that testimony that spill was "possibly obscured" and not "noticeable" and that claimant herself could not see spill "was insufficient to create a reasonable inference that spill had been on the floor long enough to charge [premises owner] with actual or constructive knowledge of its existence"), *with Texas State Tech. Coll. v. Washington*, No. 10-15-00089-CV, 2015 Tex. App. LEXIS 9753, at *5 (Tex. App.—Waco Sept. 17, 2015, no pet.) (mem. op.) (concluding evidence that premises-owner governmental unit knew about water on floor in area where plaintiff slipped at least hour before fall was enough to raise fact issue as to whether actual and constructive notice and whether immunity

---

A.      Just dirt that you find on the floor, like brown dirt.
Q.      Okay.  So there were specks of dirt in the liquid after you fell?
A.      Yes.

Given that Steinbach herself could not see the "clear" liquid substance, we conclude that the evidence that the liquid was dirty is not sufficient to create a fact issue as to appellants' constructive notice. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 938 (Tex. 1998) (concluding that "evidence that the macaroni salad had 'a lot of dirt' and tracks through it and the subjective testimony that the macaroni salad 'seemed like it had been there awhile' is no evidence that the macaroni had been on the floor long enough to charge Wal-Mart with constructive notice of this condition"); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983) (finding that evidence of general dirtiness could not support premises defect claim when claimant admitted that he "slipped on a grape, not on dirt or other slippery material").

14

waived); *Kroger Stores, Inc. v. Hernandez*, 549 S.W.2d 16, 17 (Tex. Civ. App.—Dallas 1977, no writ) (concluding that plaintiff's testimony that vomit was "already dried where it looks like a cake" sufficient to prove constructive notice); *Furr's Inc. v. Bolton*, 333 S.W.2d 688, 690 (Tex. Civ. App.—El Paso 1960, no writ) (concluding that testimony of grape juice having dried around edges sufficient to establish constructive notice).

Steinbach relies on the deposition testimony of the custodian who was assigned to clean the stairs at the time of her fall and the former custodian to argue that there is a material fact issue as to whether appellants had constructive notice. *See Miranda*, 133 S.W.3d at 228 (shifting burden to plaintiff to show disputed material fact issue regarding jurisdiction once governmental unit meets its burden). The testimony from the custodians supported findings that the stairwells would get dirty and have liquid spills on them, that the stairwells were only cleaned once a day unless there was a reported problem, and that a liquid spill on the stairs would make the stairs slippery and a "dangerous condition."[8] Steinbach argues that this evidence demonstrates that "it was reasonably foreseeable that a liquid spilled on the stairs made of a rubberized material would be slippery and that a person descending the steep stairwell could be injured if they slipped." Steinbach also argues that appellants knew or should have known that the stairwell would constitute a dangerous condition

---

[8] The custodian who cleaned the stairwell at the time of Steinbach's fall testified that she would find "[p]aper, cereal. Dirt, food, spit. Anything and everything pretty much. Filth." She also testified that she would find "spills" and that it "was a priority" to dry and clean because "[i]t would be slippery" and agreed that, if she did not clean a spill up, it would be a dangerous condition.

15

if laundry detergent was spilled on the stairs and that it was foreseeable that liquid would be spilled on the stairs "by college students going back and forth to the laundry room."[9]

The custodians' testimony, however, does not create a fact issue as to the length of time that the liquid substance was on the stairs prior to Steinbach's fall. *See, e.g.*, *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex. 2006) (concluding that slip-and-fall claimant failed to prove grocery store's actual or constructive notice of unreasonably dangerous condition of "ice on the floor" because claimant failed to adduce evidence that grocery store possessed actual or constructive knowledge of ice on which claimant slipped and noting that ice had not "fully melted"); *Reece*, 81 S.W.3d at 816–17 (concluding evidence insufficient to charge premises owner with constructive notice and requiring "some proof of how long the hazard was there before liability can be imposed on premises owner for failing to discover and rectify, or warn of, the dangerous condition"); *see also Cox*, 2014 Tex. App. LEXIS 9522, at *7–8 (collecting slip-and-fall cases in which no "proof from which a factfinder could draw a reasonable inference as to how long [substance] was on the floor"); *Hunnicutt v. Dallas/Fort Worth Int'l Airport Bd.*, No. 2-08-297-CV, 2009 Tex. App. LEXIS 5952, at *10 (Tex. App.—Fort Worth July 30, 2009, pet. denied) (mem. op.) (concluding that no evidence of constructive knowledge and noting that without evidence of when condition became defective, "no one can say whether [premises owner] could have discovered the

---

[9] Among her claims, Steinbach challenged the number of custodians assigned to maintain and clean Sterry Hall and the instruction and training that the custodians received in safety or preventive measures. Appellants, however, are immune from claims for injuries caused by a governmental unit's negligent training or supervision. *See Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001) (concluding that claims of negligent training or supervision involve only misuse or non-use of information, not use of tangible property, and thus are barred by sovereign immunity).

16

problem and remedied it prior to [claimant's] accident"); *Biermeret v. University of Tex. Sys.*, No. 2-06-240-CV, 2007 Tex. App. LEXIS 6383, at *18 (Tex. App.—Fort Worth Aug. 9, 2007, pet. denied) (mem. op.) (affirming trial court's ruling sustaining governmental unit's plea to jurisdiction in slip-and-fall case and concluding that claimant had not shown that governmental unit, were it private person, would be liable because no pleadings or jurisdictional evidence that governmental unit "possessed actual or constructive knowledge not just that the tile floor in the shower area was prone to become wet and slick, but that on the date in question it actually had become wet and slick prior to [claimant]'s fall").

Because appellants' evidence demonstrated that they did not have actual or constructive notice of the substance and Steinbach failed to present evidence to raise a material fact issue as to whether appellants had constructive notice of the substance based on the length of time that it was on the stairs prior to her fall, we conclude that she failed to present evidence raising a fact question regarding the notice element of her premises and special defect claims. *See Reece*, 81 S.W.3d at 816–17 (requiring "some proof of how long the hazard was there"); *Ogueri*, 2011 Tex. App. LEXIS 2453, at *17–18 (concluding claimant failed to present evidence to raise fact question on notice element regarding premises liability claim based on slippery floor); *see also Miranda*, 133 S.W.3d at 228 (mirroring standard of review for summary judgment when jurisdictional evidence implicates merits of case). Thus, she failed to present a premises or special defect claim based on the liquid substance that appellants would be liable to her were they private persons. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2) (waiving immunity "if the governmental

17

unit would, were it a private person, be liable to the claimant according to Texas law"); *Whitley*, 104 S.W.3d at 542 (requiring plaintiff to demonstrate waiver of immunity under TTCA).

For these reasons, we conclude that the district court erred when it denied appellants' pleas to the jurisdiction as to Steinbach's premises and special defect claims based on the liquid substance on the stairs and sustain appellants' first issue.[10]

## Claims Based on the Stairs

Appellants' remaining issues address Steinbach's claims based on her allegations related to the design of the stairs, including the lack of handrails on one side of the stairwell, the lack of a "nose" on the end of each stair step, and the "inadequate or defective materials on the stairwell." In their second issue, appellants argue that Steinbach did not plead or prove waiver of immunity as to her claim based on the negligent condition or use of tangible personal property."[11] *See* Tex. Civ.

---

[10] Appellants also argue that Steinbach has not presented a special defect claim because the liquid substance on the stairs was not an alleged defect related to roadways, thoroughfares, or the like. *See* Tex. Civ. Prac. & Rem. Code § 101.022(b) (describing "special defects such as excavations or obstructions on highways, roads, or streets"); *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (describing characteristics of "narrow" class of "special defects"). Because we have concluded that the district court erred in denying appellants' plea to the jurisdiction as to her special defect claim on a separate ground, we do not reach this alternative argument.

[11] According to Steinbach, appellants' immunity is waived "based on its use of the rubberized material on the flooring on the way to the laundry room [that] was a dangerous condition to safely ascend and descend that constituted proximate cause [of her] accident." Appellants counter that Steinbach cannot proceed on her general negligence claims once a premises liability claim is identified. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 233 (Tex. 2004) (recognizing that "allow[ing] plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless" (citations omitted)); *City of Richardson v. Justus*, 329 S.W.3d 662, 665 (Tex. App.—Dallas 2010, no pet.) (concluding that, "[t]o the extent [plaintiff] attempts to assert a claim based on any negligence . . . separate and apart from her

18

Prac. & Rem. Code § 101.021(2). In their third and fourth issues, appellants raise exceptions to a governmental unit's waiver of immunity under the TTCA. They argue that there was no waiver of immunity for the discretionary design of the staircase, "including the placement of safety features, design of the stairs steps and the choice of materials," and there is no waiver of immunity for premises defects when the premises were constructed before 1970. *See id.* §§ 101.056, .061. Because they are dispositive as to Steinbach's remaining claims, we limit our analysis to appellants' third and fourth issues.

Section 101.056 of the TTCA provides:

This Chapter does not apply to a claim based on:

(1)    the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2)    a governmental unit's decision not to perform an act or its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id.* § 101.056.[12] "In other words, the State remains immune from suits arising from its discretionary acts and omissions." *Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002). Further,

---

premises liability claims, the Act does not waive the City's governmental immunity for such a claim"). Because we have concluded that the district court erred in denying appellants' pleas to the jurisdiction as to Steinbach's claims based on appellants' use of the stair-tread material on a separate ground, we do not reach this alternative argument by appellants for reversing the district court's order.

[12] Steinbach does not allege that the placement of a hand rail on both sides of the stairwell, a "nose" on the end of each stair step, or a different type of material for the stair tread was required by law.

19

governmental units retain immunity from claims related to a condition on a premises which was constructed before 1970. *See* Tex. Civ. Prac. & Rem. Code § 101.061 ("This chapter does not apply to a claim based on an act or omission that occurred before January 1, 1970.").

Appellants' evidence supporting their plea to the jurisdiction included the affidavit of the associate director for the office of facilities, planning, design, and construction at Texas State University–San Marcos. He testified that he had access to the construction records, including construction drawings of Sterry Hall. Based on his review of those records, he testified that "Sterry Hall was built prior to 1970 and that the stairwells in Sterry Hall have not undergone any structural renovations since the building was constructed." He also testified that the only modification on record to the stairs in Sterry Hall was made in 2000 when the original stair tread "made of a rubber material" was replaced with "a new rubber tread" "to provide a slip resistant surface." This evidence established that the stairs were constructed prior to 1970 and, thus, that appellants were immune from claims based on the original design of the stairs, including the lack of a handrail on both sides of the stairwell and "nose" on the end of each stair and the steepness of the stairs. *See id.* § 101.061; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 698–99 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (rejecting argument that county had duty to install "non-skid floor covering in shower area" based on continued use of area after 1970 and "awareness of the hazardous condition" and collecting cases rejecting similar arguments involving structures built before 1970).

The evidence also established that appellants were immune from claims based on the replacement of the stair-tread material in 2000, as well as the lack of a handrail on both sides of the stairwell and "nose" on the end of each step, because those decisions were discretionary design

20

decisions. *See* Tex. Civ. Prac. & Rem. Code § 101.056; *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) ("[D]ecisions about installing safety features are discretionary decisions for which the State may not be sued."); *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) ("A court should not second-guess a governmental unit's decision about the type of marker or safety device that is the most appropriate."); *Smith*, 326 S.W.3d at 699–70 (concluding county immune from allegation that it was negligent for failing to install safety feature that was not part of original building construction and noting that "courts have held that failing to modify a pre-1970 structure to install a safety feature that was not part of the original structure is an exercise of a governmental unit's discretion for which it retains immunity"); *Perez*, 180 S.W.3d at 913 (concluding that city's discretionary decision regarding design of concrete pit "cannot be the basis for a claim of waiver of sovereign immunity"); *University of Tex. Health Sci. Ctr. at San Antonio v. Bruen*, 92 S.W.3d 24, 27 (Tex. App.—San Antonio 2002, pet. denied) (considering decisions about structure's design to be "discretionary acts" and not subject to waiver of immunity under TTCA).

The burden thus shifted to Steinbach to show that a fact issue exists precluding the exceptions from applying to her claims based on the stairs. *See Miranda*, 133 S.W.3d at 228. Steinbach concedes in her briefing that the decisions concerning the placement of the hand rails and use of rubberized material leading to the laundry room were discretionary decisions but argues that there was evidence of negligent maintenance of the premises to prevent the discretionary-function exception from applying. She also argues that there was no evidence that Sterry Hall "had remain[ed] in the same condition since its construction." Steinbach's pleaded facts, however, included that "Sterry Hall was constructed in 1966 and at the time of said incident, had not been

subject to a major renovation since that time" and, as stated above, appellants' evidence included that the "stairwells in Sterry Hall have not undergone any structural renovations since the building was constructed." Further, although the stair tread was replaced after 1970, Steinbach's allegations concerning the stair tread were conditioned on appellants' failure to discover the liquid substance on the stairs prior to her fall, not that the material on the stairs was worn-out or otherwise not being properly maintained. *See University of Tex. at San Antonio v. Trevino*, 153 S.W.3d 58, 62 (Tex. App.—San Antonio 2002, no pet.) (discussing distinction between "design level" and "maintenance level" decisions and holding that evidence that bleachers were loose and warped from wear and tear prevented discretionary-function exception from applying).

Because we conclude that Steinbach's claims as to the stairs were based on discretionary-design decisions or a condition on the premises constructed before 1970, we sustain appellants' third and fourth issues and do not reach their second issue.

## CONCLUSION

For these reasons, we reverse the district court's order denying appellants' pleas to the jurisdiction and dismiss Steinbach's claims for lack of subject matter jurisdiction.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Reversed and Dismissed

Filed:   November 24, 2015

22